# EXHIBIT H

Only the Westlaw citation is currently available.

Circuit Court of Illinois, Cook County.

TRAVEL 100 GROUP, INC., on behalf of itself and all others similarly situated, Plaintiff,
v.
EMPIRE COOLER SERVICE, INC., an Illinois Corporation, Defendant and Third-Party Plaintiff
STRATEGIC MARKETING CONCEPTS, INC., Third-Party Defendant

No. 03 CH 14510.

Oct. 19, 2004.

MEMORANDUM OPINION AND ORDER

MCGANN, J.

\*1 Plaintiff, Travel 100 Group, Inc., ("Travel 100") on behalf of itself and all others similarly situated, moves, pursuant to Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, to certify a class of "all persons who were sent facsimiles of material advertising the commercial availability of any property, goods or services by or on behalf of Empire Cooler Service, Inc. and with respect to whom Defendant cannot provide evidence of prior express permission for the sending of such faxes, and which were sent to telephone numbers within Illinois within four years of the date of service of the summons and complaint upon Defendant". Defendant Empire Cooler Service, Inc. ("Empire") objects to class certification with respect to two of Section 2-801's requirements, the requirement that there be "questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members" 735 ILCS 5/2-801(2) and the requirement that the class action be "an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4)

I. FACTS RELEVANT TO THE MOTION

Empire is in the business of selling and leasing commercial icemaking machines for use in the restaurant and medical fields. The majority of its customers are small family owned restaurants and hospitals in the Chicago area. In October, 2002, Empire Cooling was approached by an advertising agency who promoted the concept of reaching potential customers by telephone facsimile messaging. On July 15, 2003, Empire contracted with the Third Party Defendant, Strategic Marketing Concepts, Inc. ("Strategic") to fax an advertisement of Empire's services to a list of recipients composed by Strategic. Strategic represented to Empire that the fax list targeted Empire's current and prior customer base. Empire paid a fee of $1,000.00 to send the advertisement of Empire's services via fax transmission. Shortly thereafter, Strategic reported to Empire that the fax advertisements had been successfully transmitted to 3,499 different recipients. The Plaintiff, Travel 100, is the only known party to have actually received one of these faxed advertisements.

The Plaintiff seeks recovery under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(C). ("TCPA") According to the TCPA, it is restricted "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine ..." An unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

II LEGAL STANDARD

Class certification is a matter under the broad discretion of the trial court. *McCabe v. Burgess,* 75 Ill.2d 457, 464, 27 Ill.Dec. 501, 389 N.E.2d 565 (1979) The class action statute sets out very clearly the requirements for maintenance of a class

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 3105679 (Ill.Cir.)
(Cite as: 2004 WL 3105679 (Ill.Cir.))

Page 2

action:

*2 "Prerequisites for the maintenance of a class action.

(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801

The **consumer** class action is an inviting procedural device to address **frauds** that cause small damages to large groups. *Gordon v. Boden*, 224 Ill.App.3d 195, 204, 166 Ill.Dec. 503, 586 N.E.2d 461 (1991). [FN1] In cases where there is a substantial number of potential claimants and the individual amounts of their claims are relatively small, Illinois courts have tended to permit the claims to proceed as a class action. *Id. at 200, 166 Ill.Dec. 503, 586 N.E.2d 461.*

> FN1. [these claims are] the ones in which the rationale for the procedure is most compelling-- individual suits are infeasible because the claim of each class member is tiny relative to the expense of litigation. *In re Rhone Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir.1995).

The Plaintiff moves to classify a group of those recipients of the unsolicited advertisements and alleges that it has met all four requirements of the statute. Empire contests only two of the alleged requirements. These will be discussed below.

The Court, however is required to analyze all four statutory elements. The potential class exceeds 3,000 members. The numerosity requirement is met. *Wood River Area Development Corp. v. Germania Federal Savings and Loan*, 198 Ill.App.3d 445, 144 Ill.Dec. 631, 555 N.E.2d 1150 (1990).

*Common Questions of Law and Fact*

Travel 100 puts forth that the common question is whether the Defendant violated the TCPA and whether the Plaintiff and other class members are entitled to statutory damages. It claims that because the Defendant acted identically to all members of the class, there is a common question of law and fact. Empire claims that none of the controverted issues are common to the class members and that there is a need to prove the elements of the cause of action for each individual class member. In its argument, Empire claims that the class members will each have to prove that they received the violative fax, that the fax was received on a fax machine which printed the message, that the fax received was unsolicited and the individual amount of damages.

It appears to this Court that the receipt of the fax on a fax machine which prints the message is not necessarily an element of the federal statute. The provision requires that a fax machine be used to send an unsolicited advertisement to a telephone fax machine. A requirement of actual receipt by the Plaintiff is arguably not apparent. It is important to note that the TCPA furthers two important governmental interests. The first is preventing the transfer of advertising costs from the merchandiser to the customer. The second is the adverse effect on commerce caused by the unwanted message occupying the telephone lines and equipment of the consumer. While the automatic printing of the message may not be required, some evidence of receipt must be shown otherwise the purpose of the Congress

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 3105679 (Ill.Cir.)
(Cite as: 2004 WL 3105679 (Ill.Cir.))

Page 3

would be frustrated. However, evidence of receipt may not be necessary where the evidence suggests that the sender sent multiple messages contemporaneously by use of automated equipment.

*3 There is no issue as to the necessity of establishing damages on an individual basis. According to the statute, a plaintiff is not required to establish such damages, but may recover for the greater sum, actual monetary losses or $500. 47 USC § 227(a)(3)(B)

The TCPA specifically prohibits those telephone facsimile messages which are sent without the recipients "prior express permission or consent." [FN2] This element, even if it is found that the other issues do need to be proven by the class members, would not defeat the commonality of the question, has the Defendant violated the TCPA. In a class action, the successful adjudication of the Plaintiff's claim will establish the other class members' right to recover. Society of St. Francis v. Dulman, 98 Ill.App.3d 16, 18, 53 Ill.Dec. 646, 424 N.E.2d 59 (1981) Where the defendant is alleged to have acted wrongfully in the same basic manner as to an entire class, common class questions dominate the case. Martin v. Heinold Commodities, Inc., 139 Ill.App.3d 1049, 1060, 94 Ill.Dec. 221, 487 N.E.2d 1098 (1985) Here, the allegation is that the identical action by the Defendant of using a fax machine to send unsolicited advertisements is wrongful to all class members. The process by which the class members prove that the fax they received was unsolicited establishes membership in the class. This proof identifies the class, but does not go to the commonality of the question. The Plaintiff has requested that the class be defined by those fax recipients that received unsolicited advertisements. As suggested above, this is a reasonable request. No harm will come to the Plaintiff by acceding to this request as the evidence suggests that more than 3,400 messages were received. By certifying this class, this Court is not, as claimed by the Defendant, reaching a finding on the merits of the underlying cause of action, but merely setting the boundaries of the class.

FN2. 47 U.S.C. § 227(a)(4)

This case can be differentiated from the cases referred to by the Defendant which did not allow certification for lack of a common question of law or fact because only questions relating to each individual remained to be adjudicated. McCabe, 75 Ill.2d 457, 27 Ill.Dec. 501, 389 N.E.2d 565; Gutansky v. Advance Mortgage Co., 102 Ill.App.3d 496, 58 Ill.Dec. 180, 430 N.E.2d 122 (1981). In those cases, there were no controverted issues of underlying fact or law. The defendants did not controvert their liability in the causes of action against them. Here, Empire does deny that it is liable according to the statute.

The decisions denying class certification of TCPA because the issue of whether the recipient gave "express invitation or permission," necessarily required an individualized inquiry into the circumstances of each message, e.g., Foreman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D.Pa.1995) and Kenro, Inc. v. Fax Daily Inc., 962 F.Supp. 1162 (S.D.Ind.1997), belie a misunderstanding of telephone facsimile advertising as alleged in the complaint and materials supporting the instant Motion. Those courts seem to resolve the matter based upon a belief that this form of messaging is occasional or sporadic and not an organized program. To the contrary, the facts before this Court yield that this Defendant engaged a third party to send more than 3,000 facsimiles to targeted businesses. The manner in which the Defendant identified these recipients will not require individualized inquiry. Indeed, the Defendant's conduct may create a presumption that the facsimiles were not legal. [FN3]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. A presumption is an inference which common sense draws from the known course of events. McElroy v. Force, 38 Ill.2d 528, 531, 232 N.E.2d 708 (1967).

*4 In addition, the Defendant proposes that the class should not be certified because class members cannot be ascertained. This argument does not avail the Defendant. It is not necessary that the class representative name the specific individuals who are possibly members of the class. Hayna v. Arby's, Inc., 99 Ill.App.3d 700, 710-711, 55 Ill.Dec. 1, 425 N.E.2d 1174 (1981). The Plaintiff need not present a list of ascertained class members nor indicate that such a list exists as part of the motion to certify. The Plaintiff must merely allege the four requirements set forth in the Illinois statute. Identity of class members is not one of these requirements. In making this decision, the Court is mindful that the party engaged by the Defendant provided a very clear definition of the targeted recipients, i.e., restaurants and hospitals in the Chicagoland area.

*Appropriate Method for the Fair and Efficient Adjudication of Controversy*

The Defendant asserts that a class action certification does not allow for a fair or efficient adjudication. The certification will not be fair because of the potential amount of damages which may be awarded is unrelated to the actual damages to the class members and does not advance consumer protection or any other public interest.

To determine if class action is the appropriate method for fair and efficient adjudication, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain. Gordon v. Boden, 224 Ill.App.3d 195, 203, 166 Ill.Dec. 503, 586 N.E.2d 461 (1991). It is this Court's opinion that the economies of time, effort and expense, and uniformity will be served by certifying the Plaintiff's class. The predominate question of the Defendant's violation of the TCPA will be resolved in one forum and thus promote efficiency and uniformity. Litigating the individual lawsuits in the present case would be a waste of judicial resources, and addressing the common issues in one action would aid judicial administration. Clark v. TAP Pharm. Prods., Inc., 343 Ill.App.3d 538, 552, 278 Ill.Dec. 276, 798 N.E.2d 123 (2003)

As to the Defendant's concerns about the propriety of the amount of damages and the amount of consumer protection afforded by the decision to grant such damages, the Court finds helpful and informative the following text from the California Appellate Court:
"[T]he TCPA damages provision was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct.... [T]he TCPA was meant to [ (1) ] 'take into account the difficult[y][of] quantify[ing][the] business interruption costs imposed upon recipients of unsolicited fax advertisements, [ (2) ] effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of "junk faxes," and [ (3) ] "provide adequate incentive for an individual plaintiff to bring suit on his own behalf."
' ... [S]tatutory damages designed to address such 'public wrongs' need not be 'confined or proportioned to [actual] loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury ...
*5 "... Congress identified two legitimate public harms addressed by the TCPA's ban on junk faxes: (1) unsolicited fax advertisements can substantially interfere with a business or residence because fax machines

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 3105679 (Ill.Cir.)
(Cite as: 2004 WL 3105679 (Ill.Cir.))

Page 5

generally can handle only one message at a time, at the exclusion of other messages; and (2) junk faxes shift nearly all of the advertiser's printing costs to the recipient of the advertisement ... [T]he TCPA's $ 500 minimum damages provision, when measured against the overall harms of unsolicited fax advertising and the public interest in deterring such conduct, is not so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." ' ( Texas v. American Blastfax, Inc., supra, 121 F.Supp.2d at pp. 1090- 1091.)

As another federal court has stated: "[I]n mathematical terms, a $500 penalty for violation of the TCPA is not so high in relation to actual damages as to violate the Due Process clause.... [E]ven if the actual monetary costs imposed by advertisers upon the recipients of unsolicited fax advertisements [are] small when compared to the $500 minimum penalty for such conduct, that penalty is not so 'severe and oppressive' as to run afoul of the Due Process clause." ( Kenro, supra, 962 F.Supp. at pp. 1166-1167; accord, ESI Ergonomic Solutions v. United Artists (2002) 203 Ariz. 94, 100 [50 P.3d 844, 850] (ESI Ergonomic Solutions ) ["penalty is not so disproportionate to actual damages as to violate due process"].)

Kaufman v. ACS Systems, Inc., 110 Cal.App.4th 886, 922-923, 2 Cal.Rptr.3d 296 (Cal.Ct.App., 2003)

The Defendant relies on three cases to support its contention that the amount of damages will create inequity if the class certification is granted. These cases do not apply the same statutory standard as in Illinois. Those cases, Berkman v. Sinclair Oil Corp., 59 F.R.D. 602 (M.D.Ill.1973); In Re: Copper Antitrust Litigation., 196 F.R.D. 348 (W.D.Wis.2000); and Walmsley v. Mercury Fin Co., 1994 U.S. Dist. Lexis 21344 (S.D.Fla.1994) [FN4] rely on the federal standard according to which a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Berkman, 59 F.R.D. at 607; Fed.R.Civ.P. 23(b)(3). This is a more stringent standard than an "appropriate method" as required by the Illinois Statute.

  FN4. This Court actually found that common questions predominated Id. at p. 16, 232 N.E.2d 708

In addition, the cases cited by the Defendant are inapposite. In re: Copper Antitrust Litigation, 196 F.R.D. 348 (WD Wisc.2000), involved a putative class found to lack commonality because of the various markets for copper. Miners sell to refiners who sell to brokers or manufacturers who resell among themselves at prices that may or may not relate to the market price allegedly manipulated by the defendants. This contrasts significantly with the relatively straight forward factual situation before this Court. In Berkman v. Sinclair Oil Corp., 59 F.R.D. 602 (MD Ill.1973), the court found that the difficulty in determining whether the use of a gasoline company credit card was for business or personal use augured against certifying a class.

*6 It is interesting to note that another federal case, applying the stricter federal standard, in which unfairness based on disproportionate damages defeated a class certification, was extremely wary of making such a decision calling its result, "anomalous". In re Trans Union Corp. Privacy Litigation., 211 F.R.D. 328, 351 (N.D.Ill. 2002). There, the class members were approximately 190 million individuals and the statutory damages were set at a minimum of $100. The District Court also commented that the to Federal Government had already taken administrative action to end the illegal action complained of by the plaintiff. This fact, the court concluded, vitiated any consumer protection concerns. In this case there may not be another viable option open to the Plaintiff.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
2004 WL 3105679 (Ill.Cir.)  
(Cite as: 2004 WL 3105679 (Ill.Cir.))

Page 6

Running through all of these cases, however, is the shadow of allegedly large devastating verdicts that bear little relation to the actual damages [FN5] resulting from a technical violation of the statute. This argument first found purchase in *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y.1972). There the court declined to certify a class of potentially 130,000 consumers who could recover the $100 statutory penalty for violation of the **truth in lending** laws. The court determined liability could reach $13 million. [FN6] The court found that the Congress in assessing the statutory penalty and allowing payment of attorneys' fees was designed to promote individual and not class litigation for violation of these statutes. This absolute prohibition for class action litigation of these claims was rejected by the Seventh Circuit in *Haynes v. Logan Furniture Mart Inc.*, 503 F.2d 1161 (7th Cir.1974). The class in *Haynes* was admittedly much smaller [FN7] but the court reasoned that the dual purpose of the **truth in lending** scheme was not only to encourage law suits by individuals but also compliance with the law. The court showed little sympathy for a creditor who disregarded legal obligations and was called to answer in a class action claim. The court instead adopted a case by case approach focusing on the size of the potential class and the actual damages caused by the wrongdoing. No Illinois case has considered this issue.

FN5. cost of paper, toner and telephone line or facsimile usage or down time.

FN6. This statute was subsequently amended by Congressional action to limit class action recovery in such cases to $100,000.

FN7. 2,500 versus 130,000

As noted the potential class is approximately 3,400 persons who received the illegal facsimile message. The actual loss is difficult to measure but pleadings in related cases have established the actual cost of receiving a message at twenty cents. This results in a potential claim of $780.00. The recovery under the TCPA is potentially $1.7 million dollars. On its face this appears to be an enormous disparity. However, to make the leap of logic that such a disparity *ipso facto* precludes certification is extremely premature and is based to a great deal on conjecture. Basing a ruling solely on the disparity also gives the Defendant little incentive to conform its conduct to legal requirements.

As to the last point, the Plaintiff properly notes that the class members are all businesses and, as corporations. As such no putative class member may appear as claimants in small claims court unrepresented by counsel. Ill. Sup.Ct. R. 282(b). A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress, particularly where the claims are small." *Gordon*, 224 Ill.App.3d at 203-204, 166 Ill.Dec. 503, 586 N.E.2d 461. "When brought by plaintiffs who have no other avenue of legal redress, the consumer class action provides restitution to the injured and deterrence to the wrongdoer." Id. at 204, 166 Ill.Dec. 503, 586 N.E.2d 461. Here it appears that forcing the class members to pursue their claims individually will make their claims impractical as they will be required to hire counsel in order to receive an award of $500. This result would seriously undermine the goal of the TCPA scheme.

*7 The disparity issue arises out of a concern great pressure will be placed on defendants to settle such claims in order to avoid financial ruin. See *In re Rhone Poulenc Rorer*, 51 F.3d 1293, 1299-1300 (7th Cir.1995). Henry J. Friendly, *Federal Jurisdiction: A General View*, 120 (1973). However, the four arguments that support this theory, class actions are not triable, defendants exposure to valid small claims

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 3105679 (Ill.Cir.)
**(Cite as: 2004 WL 3105679 (Ill.Cir.))**

Page 7

is increased, weak but large claims coerce compromise and class actions inherently coerce settlements, are entirely contradictory and not supported by empirical evidence. See Silver, *We're Scared to Death: Class Certification and Blackmail*, 78 N.Y.U.L. Rev 1357 (2003). These arguments also ignore the fact that the Defendant, if the allegations are proven, broke the law.

Here, the claims can easily be tried. The value of the claims while certain is readily ascertainable and individually relatively small in number and amount. In addition, it appears the Court has the inherent authority under its power of remitturer to reduce the aggregate amount of the award to avoid the feared consequences, while enforcing the stated goal of the statutory scheme. *Parker v. Time Warner Entertainment Company, L.P.*, 331 F.3d 13 (2nd Cir.2003), Newman, J., concurring at pp 37-47.

The Defendants advance no argument concerning the adequacy of the proposed class representative or class counsel. However, these requirements have due process implications. Thus analysis is required.

In order to determine adequacy of representation, the trial judge must examine two issues:
> Will representation by the proposed class representative protect the absent members of the class who must be afforded due process? *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 339, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977).
> Does the attorney have the skill, qualifications and experience to conduct the proposed litigation? *Steinberg*, 69 Ill.2d at 339, 13 Ill.Dec. 699, 371 N.E.2d 634.

Unlike the requirement in Rule 23 of the Federal Rules of Civil Procedure that the claim of the proposed class representative be typical of those of the class, Illinois has adopted a more liberal approach. *Carrao v. Health Care Service Corp.*, 118 Ill.App.3d 417, 73 Ill.Dec. 684, 454 N.E.2d 781 (1st Dist.1983). Instead, Illinois requireis that the representative fairly, adequately and efficiently represent absent class members. *Gordon v. Boden*, 224 Ill.App.3d 195, 203, 166 Ill.Dec. 503, 586 N.E.2d 461 (1st Dist.1991).

This requirement has been defined as a showing that the interest of the proposed class representatives are not antagonistic to those of the absent class members. Thus, issues such as slight variations in the claim, *Purcell v. Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1078, 125 Ill.Dec. 585, 530 N.E.2d 994 (1st Dist.1975), or individualized affirmative defenses, *Wenhold v. AT & T*, 142 Ill.App.3d 612, 619, 96 Ill.Dec. 803, 491 N.E.2d 1263 (1st Dist.1986) will not defeat certification. However, in cases where there is evidence of antagonism or collusion, *Hansberg v. Lee* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940), between the proposed representative and absent class members or a close connection with the lawyer representing the proposed class, *Barliant v. Follett Corporation*, 74 Ill.2d 266 (1978), class certification should be scrutinized. Here there is no suggestion of antagonism, collusion or a close relationship between the proposed class representative and counsel.

*8 As to the issue of adequate representation by counsel, in addition to the lack of any conflict or close relationship between counsel and the proposed representative, the Court is satisfied that counsel's experience in these matters will guarantee that the interests of absent class members are adequately represented.

IT IS HEREBY ORDERED

1. Plaintiff's Motion for Class Certification is GRANTED.

2. The Court certifies the following class:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 3105679 (Ill.Cir.)
**(Cite as: 2004 WL 3105679 (Ill.Cir.))**

all persons who received telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Empire Cooler Service, Inc. and with respect to whom Defendant cannot provide evidence of prior express permission for the sending of such faxes, and which were sent to telephone numbers in or after October, 2002;

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.