# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER WOODS, | ) | |
| individually and on behalf of a class, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 49 |
| | ) | Judge Kendall |
| v. | ) | Magistrate Judge Mason |
| | ) | |
| ROGERS ENTERPRISES, INC., | ) | |
| d/b/a ROGERS & HOLLANDS | ) | |
| JEWELERS, | ) | |
| and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Christopher Woods brings this action to secure redress for the violation by Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.     One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

3.     On June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 went into effect.  The Act amends section 1681 of the FCRA, which provides a private right of action against "[a]ny person who willfully fails to comply with any [of its] requirement[s]." *See* 15 U.S.C. § 1681n(a).  The Act excludes as a willful violator "any person who printed an expiration date on any receipt provided to a consumer cardholder ... between December 4, 2004, and June 3,

1

2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt." 15 U.S.C. §1681n(d). The Act further states that it "shall apply to any action ... that is brought for violation of [§1681c(g) of the FCRA] ... without regard to whether such action is brought before or after the date of the enactment of this Act."

4.    Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers ..." *Pirian v. In-N-Out Burgers*, 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D. Cal., Apr. 5, 2007); accord, *Iosello v. Leiblys, Inc.*, 502 F.Supp.2d 782 (N.D. Ill. 2007); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 07 C 2934, 2007 U.S. Dist. LEXIS 77440 (N.D. Ill., Oct. 17, 2007); *Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007).

5.    The purpose of this "truncation requirement" is to prevent identity theft. The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

6.    One common *modus operandi* of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions. Identity thieves who do this are known as "carders" and "dumpster divers." This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information. Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 8, 2005, p. B1.

7.    To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display more than the last five digits of the card number.

8.    The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

9.    Defendant has willfully violated this law and failed to protect plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

10.    Plaintiff brings this action against defendant based on defendant's violation of 15 U.S.C. §§1681 *et seq.*  Plaintiff seeks statutory damages, attorneys fees, costs, and such other relief as the Court deems proper, including punitive damages.

**JURISDICTION AND VENUE**

11.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p (FCRA).

12.    Venue in this district is proper because defendant Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, does business here.

**PARTIES**

13.    Plaintiff, Christopher Woods, is a resident of this district.

14.    Defendant, Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, is a Delaware corporation that does business at 222 Yorktown Center, Lombard, IL 60148.

15.    Defendant Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

16.    Defendants Does 1-10 are individual officers, directors, employees and

3

agents of defendant Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, who authorized, directed or participated in the violations of law complained of.

## FACTS

17. On November 23, 2007, plaintiff received from Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, at its establishment located at 222 Yorktown Center, Lombard, IL 60148, a computer-generated cash register receipt which displayed eight digits of plaintiff's store credit card.

## CLASS ALLEGATIONS

18. Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

19. The class is defined as all persons to whom Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring at its Yorktown Center location after December 4, 2006, which receipt displays more than the last five digits of the person's credit card or debit card number.

20. The class is so numerous that joinder of all individual members in one action would be impracticable.

21. There are over 100 persons to whom Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays more than the last five digits of the person's credit card or debit card number.

22. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

4

23. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

      a. Whether defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

      b. Whether defendant thereby violated FACTA;

      c. Whether defendant's conduct was willful;

      d. Identification and involvement of the Doe defendants.

24. Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

25. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

26. Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

**. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number <u>or</u> the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

27. On June 3, 2008, an amendment to FACTA was enacted that provides that printing only the card expiration date on a receipt, while redacting all but the last five digits of the card number, does not constitute a willful violation if the receipt was printed before the enactment of the amendment.

28. With respect to machines that were first put into use after January 1, 2005,

15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

29.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

30.     Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members.  In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

31.     After the effective date of the statute, defendant, at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant failed to comply with the truncation requirement.

32.     FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

33.     Defendant knew or should have known of the truncation requirement.

34.     Visa, MasterCard, the PCI Security Standards Council (a consortium founded by Visa, MasterCard, Discover, American Express and JCB), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same.

6

35.     The requirement was widely publicized among retailers.

36.     For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "[t]oday, I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether....  The first phase of this new policy goes into effect July 1, 2003 for all new terminals...." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

37.     Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

38.     The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

39.     For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt...".  These statements were accompanied by a picture of a receipt showing precisely what had to be removed.  Visa required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

40.     Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.

7

41.    American Express has a manual that contains a similar depiction of what information must be suppressed.

42.    These requirements were widely publicized.  The following are illustrative.

43.    On July 9, 2003, L. Richard Fischer of Visa USA presented a written statement to the House Committee on Financial Services  supporting the truncation requirements of what ultimately became FACTA.  Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity.  For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

44.    The Office of Thrift Supervision of the Treasury Department ("OTS"), is responsible, *inter alia*, for compliance with FACTA by federal savings banks.  Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution.  The February 2006 edition of the Handbook states:

### Truncation of Credit and Debit Card Account Numbers

> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

45.    Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants.  In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

8

Your credit card terminal is now–or will soon be required by law or the bankcard associations to truncate–or limit–the information that can appear on electronically printed sales receipts.

What that means is that on all cardholder numbers: * * * *

o    All but the last four numbers of the card number must be obscured....

46.    In 2006, Heartland broadly disseminated a second pamphlet, which

included the following statement:

**Make every transaction a safe one.** * * * *

o    The cardholder's receipt should not include the card's expiration date and ***should only include*** the last 4 or 5 digits of the card number.  * * * *

47.    Another credit card processor, Commerce Bank, sent "Merchant Compliance

Awareness" notices to its customers during 2004.  These stated that all but the last four digits of the

cardholder account number had to be suppressed from the receipt.

48.    Many restaurant and retail trade associations apprised their merchant

members that FACTA imposed truncation requirements mirroring Visa's truncation requirements.

49.    The April 2005 edition of the Food Industry Advisor, the newsletter for the

Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included

an article regarding the requirements of credit card truncation under FACTA which included the

following language:

[A]ccording to the FACTA Act,'no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction....'

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the

National Association of Convenience Stores.

9

50.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association

Newsletter included an article regarding requirements for credit card truncation, which stated:

> [T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals....

51.    After the enactment of FACTA, the Wisconsin Restaurant Association issued

a "Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately. This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card account number and the expiration date from the sales receipt. For example: A non-truncated receipt would list:
>
> Acct. #  1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:
>
> Acct. # **** **** **** 3210 Exp ****....
>
> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale....

52.    In the January 2005 edition of the Massachusetts Restaurant Association

Newsletter, an article appeared apprising association members that both Visa and MasterCard

require truncation of the entire expiration date and all but the last four digits of the cardholder

account number.

53.    Similar information was disseminated by the Ohio Restaurant Association,

the Oklahoma Restaurant Association, and a significant number of other restaurant trade

associations, and retail merchant trade associations.

       54.     The Independent Insurance Agents & Brokers of America circulated a

report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The

Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act."  In relevant

part, this publication stated:

> Under the FACT Act, businesses and others accepting credit or debit cards for
> payment may not print more than the last five digits of the card number nor may they
> print the expiration date upon any receipt provided to the cardholder at the point of
> sale.

       55.     The November 18, 2004 edition of the Compliance Challenge, published

by the Credit Union National Association News, stated: "FACTA prohibits anyone that accepts

credit/debit cards to print more than the last 5 digits of the card number or expiration date on  any

receipt at the point of sale or transaction...."

       56.     In the October 10, 2003 edition of the PT Bulletin, a newsletter for the

American Physical Therapy Association, an article appeared titled, "Truncation Requirement Now

in Effect for Credit Card Processing."  In relevant part, this article stated:

> Physical therapists who accept credit card payments from patients and clients face
> new processing requirements from major credit card companies. In an effort to
> minimize opportunities for credit card fraud, Visa and MasterCard...have mandated
> that credit card account numbers and expiration dates be masked on all receipts.
> Compliance with this requirement is not optional....

       57.     The Federal Trade Commission issued a business alert in May 2007 entitled

"Slip Showing?  Federal Law Requires All Businesses to Truncate Credit Card Information on

Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act

(FACTA), the electronically printed credit and debit card receipts you give your customers must

shorten – or truncate – the account information.  You may include no more than the last five digits

11

of the card number...".

58.    Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale.  The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc.  In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

59.    Credit and debit card account numbers are not randomly generated.  Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips.  Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) an number unique to the card; and (d) a check digit.

60.    The MII identifies the industry of the issuer of the card.

61.    The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

62.    The seventh through next to the last digit, up to a maximum of 12 digits, is the number unique to the card.

63.    The last digit is a "check digit" that is not randomly assigned, but instead is calculated by a defined algorithm.  Therefore, the "check digit" is derivative of the other numbers in the credit card number.

64.    Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

65.    In addition, a would-be identity thief who steals a receipt containing the last four or five digits of a credit card account number can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder.  The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

66.    The costs of truncating credit and account numbers is minimal.

67.    Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.   Defendant could have readily done the same.

68.    Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

69.     The FCRA, 15 U.S.C. §1681n, provides:

**§1681n.  Civil liability for willful noncompliance**

**(a) In general.  Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of–**

**(1)**

**(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or**

**(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a**

13

**permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;**

**(2) such amount of punitive damages as the court may allow; and**

**(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .**

70.     The FCRA, 15 U.S.C. §1681p, provides:

**§ 1681p.  Jurisdiction of courts; limitation of actions**

**An action to enforce any liability created under this title [15 USCS §§ 1681 et seq.] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of--**

**(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or**

**(2) 5 years after the date on which the violation that is the basis for such liability occurs.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants as follows:

a.     For statutory damages of $100 to $1,000 per violation;

b.     For attorney's fees, litigation expenses and costs;

c.     For such other and further relief as the Court may deem proper,

including punitive damages.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller

14

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


## **JURY DEMAND**

Plaintiff demands trial by jury.


s/ Daniel A. Edelman
Daniel A. Edelman

15

## **NOTICE OF LIEN**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)