**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHRISTOPHER WOODS,
individually and on behalf of a class,

    Plaintiff,

  v.

ROGERS ENTERPRISES, INC., d/b/a
ROGERS & HOLLANDS JEWELERS, and
DOES 1-10,

    Defendants.

08 C 49
Judge Kendall
Magistrate Judge Mason

**ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED
COMPLAINT**

   Defendant, Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers ("Defendant"), by

and through its attorneys, Patrick T. Stanton, Heather L. Kramer, and Jennifer Zlotow, hereby

answers Plaintiff's First Amended Complaint as follows:

   1.  Plaintiff Christopher Woods brings this action to secure redress for the violation

by Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, of the Fair and Accurate Credit

Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

   **ANSWER:**  Defendant admits that Plaintiff purports to bring this action under the Fair

and Accurate Credit Transaction Act ("FACTA") amendment to the Fair Credit Reporting Act

("FCRA").  Defendant denies the remaining allegations of Paragraph 1.

   2.  One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

  **No person that accepts credit cards or debit cards for the transaction of
business shall print more than the last 5 digits of the card number or the
expiration date upon any receipt provided to the cardholder at the point of
sale or transaction.**

1

**ANSWER:**    Paragraph 2 purports to recite FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.  Defendant admits that one provision of FACTA is codified as 15 U.S.C. § 1681c(g).

3.      On June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 went into effect.  The Act amends section 1681 of the FCRA, which provides a private right of action against "[a]ny person who willfully fails to comply with any [of its] requirement[s]."  *See* 15 U.S.C. § 1681n(a).  The Act excludes as a willful violator "any person who printed an expiration date on any receipt provided to a consumer cardholder ... between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt."  15 U.S.C. §1681n(d).  The Act further states that it "shall apply to any action ... that is brought for violation of [§1681c(g) of the FCRA] ... without regard to whether such action is brought before or after the date of the enactment of this Act."

**ANSWER:**    Defendant admits the allegations of the <u>first</u> sentence of Paragraph 3. Further answering, the remaining allegations of Paragraph 3 purport to recite an amendment to FCRA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.

4.      Section 1681 c(g) is "not ambiguous."  It "expressly prohibits printing more than the last five digits of the credit/debit card numbers ..."  *Pirian v. In-N-Out Burgers*, 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D. Cal., Apr. 5, 2007); accord, *Iosello v. Leiblys, Inc.*, 502 F.Supp.2d 782 (N.D. Ill. 2007); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 07 C 2934, 2007 U.S. Dist. LEXIS 77440 (N.D. Ill., Oct. 17, 2007); *Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007).

**ANSWER:**    Defendant denies the <u>first</u> sentence of Paragraph 4.  Further answering, Paragraph 4 purports to recite a portion of a Central District of California decision in *Pirian v. In-N-Out Burgers*, 06-1251, 2007 U.S. Dist. LEXIS 25384 ,*8 (C.D. Cal. 2007), and Defendant denies any characterization of the decision inconsistent with the language of the decision.  The allegation that several subsequent decisions are in "accord" with *Pirian* is a legal conclusion to which no answer is required.  To the extent an answer is required, it is denied.

5.      The purpose of this "truncation requirement" is to prevent identity theft.  The Federal Trade Commission estimates that over 9 million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 5 and, therefore, denies the same.

6.    One common *modus operandi* of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions.  Identity thieves who do this are known as "carders" and "dumpster divers."  This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information.  Robin Sidel, "Identity Theft – Unplugged –Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 8, 2005, p. B1.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 6 and, therefore, denies the same.

7.    To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display more than the last five digits of the card number.

**ANSWER:**    Paragraph 7 purports to characterize FACTA and the legislative intent in enacting FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.

8.    The law gave merchants who accept credit cards and/or debit cards up to three years to comply with this requirement, requiring full compliance with its provisions no later than December 4, 2006.

**ANSWER:**    Paragraph 8 purports to characterize FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.

9.    Defendant has willfully violated this law and failed to protect plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement.

**ANSWER:**    Defendant denies the allegations of Paragraph 9.

10.    Plaintiff brings this action against defendant based on defendant's violation of 15 U.S.C. §§1681 *et seq.*  Plaintiff seeks statutory damages, attorneys fees, costs, and such other relief as the Court deems proper, including punitive damages.

**ANSWER:**    Defendant admits that Plaintiff purports to bring this action for violation of l5 U.S.C. §§1681 et seq. and seeks statutory damages, attorneys' fees, costs, and other relief

CHICAGO\2471893.1
ID\HLK

as the Court deems proper, including punitive damages. Defendant denies the remaining allegations of Paragraph 10, and specifically denies that Plaintiff is entitled to any of the relief requested.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p (FCRA).

**ANSWER:**    Defendant admits the allegations of Paragraph 11.

12.    Venue in this district is proper because defendant Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, does business here.

**ANSWER:**    Defendant admits the allegations of Paragraph 12.

## PARTIES

13.    Plaintiff, Christopher Woods, is a resident of this district.

**ANSWER:**    Defendant admits the allegations of Paragraph 13.

14.    Defendant, Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, is a Delaware corporation that does business at 222 Yorktown Center, Lombard, IL 60148.

**ANSWER:**    Defendant admits that it is a Delaware corporation and one of its retail stores at which it does business is located at 222 Yorktown Center, Lombard, IL, 60148.

15.    Defendant Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

**ANSWER:**    Paragraph 15 purports to recite FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute. Further answering, Defendant admits that it accepts credit and debit cards for the transaction of business. Defendant denies the remaining allegations of Paragraph 15.

16.    Defendants Does 1-10 are individual officers, directors, employees and agents of defendant Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, who authorized, directed or participated in the violation of law complained of.

**ANSWER:**    Defendant denies the allegations of Paragraph 16.

## FACTS

17.    On November 23, 2007, plaintiff received from Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, at its establishment located at 222 Yorktown Center, Lombard, IL 60148, a computer-generated cash register receipt which displayed eight digits of plaintiff's store credit card.

**ANSWER:**    Defendant admits the allegations of Paragraph 17.

## CLASS ALLEGATIONS

18.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

**ANSWER:**    Defendant admits that Plaintiff purports to bring this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3). Defendant denies the allegation that a class proceeding is appropriate and should be maintained. Defendant denies all allegations of Paragraph 18 not specifically admitted herein.

19.    The class is defined as all persons to whom Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring at its Yorktown Center location after December 4, 2006, which receipt displays more than the last five digits of the person's credit card or debit card number.

**ANSWER:**    Defendant admits that Plaintiff purports to define the purported class as stated.  Defendant denies that a class proceeding is appropriate and should be maintained. Defendant denies all allegations of Paragraph 19 not specifically admitted herein.

20.    The class is so numerous that joinder of all individual members in one action would be impracticable.

**ANSWER:**    Defendant denies the allegations of Paragraph 20.

21.    There are over 100 persons to whom Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays more than the last five digits of the person's credit card or debit card number.

**ANSWER:**    Defendant admits the allegations of Paragraph 21.

22.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal theories and arise from the same unlawful and willful conduct.

CHICAGO\2471893.1
ID\HLK

**ANSWER:**    Defendant denies the allegations of Paragraph 22.

23.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

a.    Whether defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

b.    Whether defendant thereby violated FACTA;

c.    Whether defendant's conduct was willful;

d.    Identification and involvement of the Doe defendants.

**ANSWER:**    Defendant denies the allegations of Paragraph 23.

24.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has no interests that conflict with the interests of the class members.  Plaintiff has retained experienced counsel.

**ANSWER:**    Defendant denies the allegations of Paragraph 24.

25.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members.  Individual actions are not economically feasible.

**ANSWER:**    Defendant denies the allegations of Paragraph 25.

**VIOLATION ALLEGED**

26.    Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

**. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number <u>or</u> the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

**ANSWER:**    Defendant denies the allegations of Paragraph 26.   Further answering,

Paragraph 26, also purports to recite FACTA, and Defendant denies any characterization of the

statute inconsistent with the language of the statute.

27.    On June 3, 2008, an amendment to FACTA was enacted that provides that printing only the card expiration date on a receipt, while redacting all but the last five digits of the card number, does not constitute a willful violation if the receipt was printed before the enactment of the amendment.

CHICAGO\2471893.1
ID\HLK

**ANSWER:**    Paragraph 27 purports to recite an amendment to FCRA, and Defendant denies any characterization of the statute inconsistent with the language of the statute. Defendant admits that the amendment to FCRA was enacted on June 3, 2008.

28.    With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(3) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

**ANSWER:**    Paragraph 28 purports to characterize FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.

29.    With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

**ANSWER:**    Paragraph 29 purports to characterize FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.

30.    Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members.  In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

**ANSWER:**    Defendant admits that it accepts credit and debit cards in the course of transacting business and uses machines that electronically print receipts for such transactions. Defendant specifically denies that a class proceeding is appropriate in this matter.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 30 and, therefore, denies the same.

31.    After the effective date of the statute, defendant, at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant failed to comply with the truncation requirement.

**ANSWER:**    Defendant admits that on or about November 23, 2007, Defendant provided Plaintiff with an electronically printed receipt, which contained more than the last five digits of his store credit card number.  Defendant specifically denies that a class proceeding is

appropriate in this matter. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31 and, therefore, denies the same.

32.    FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

**ANSWER:**    Paragraph 32 purports to characterize FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute. Defendant admits that FACTA was enacted in 2003.

33.    Defendant knew or should have known of the truncation requirement.

**ANSWER:**    Defendant denies the allegations of Paragraph 33.

34.    Visa, MasterCard, the PCI Security Standards Council (a consortium founded by Visa, MasterCard, Discover, American Express and JCB), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same.

**ANSWER:**    Defendant denies the allegations of Paragraph 34.

35.    The requirement was widely publicized among retailers.

**ANSWER:**    Defendant denies the allegations of Paragraph 35.

36.    For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "[t]oday, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether.... The first phase of this new policy goes into effect July 1, 2003 for all new terminals...." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 36 and, therefore, denies the same. Paragraph 36 purports to set forth a quotation from a document. Any documents or other means of

communicating information referred to in Paragraph 36 are the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

37.    Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 37 and, therefore, denies the same.

38.    The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 38 and, therefore, denies the same.

39.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt...". These statements were accompanied by a picture of a receipt showing precisely what had to be removed. Visa required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 39 and, therefore, denies the same. Further answering, Paragraph 39 refers to the requirements and other matters set forth in a written document. This document is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

40.    Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.

**ANSWER:**    Defendant admits that it accepts VISA cards. Defendant denies the remaining allegations of Paragraph 40.

41.    American Express has a manual that contains a similar depiction of what information must be suppressed.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 41 and, therefore, denies the same.    Further answering, Paragraph 41 characterizes a manual.  The purported manual is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

42.    These requirements were widely publicized.  The following are illustrative.

**ANSWER:**    Defendant denies the allegations of Paragraph 42.

43.    On July 9, 2003, L. Richard Fischer of Visa USA presented a written statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA.  Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity.  For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 43 and, therefore, denies the same.    Further answering, Paragraph 43 refers to a written statement.  The written statement is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

44.    The Office of Thrift Supervision of the Treasury Department ("OTS"), is responsible, *inter alia*, for compliance with FACTA by federal savings banks.  Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution.  The February 2006 edition of the Handbook states:

> **Truncation of Credit and Debit Card Account Numbers**
>
> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

CHICAGO\2471893.1
ID\HLK

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 44 and, therefore, denies the same.     Further answering, the allegations of the <u>first</u> and <u>second</u> sentences of Paragraph 44 are matters of public record.  Defendant denies such allegations to the extent inconsistent therewith.  The remaining allegations of Paragraph 44 refer to an Examination Handbook.  The Examination Handbook is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

45.     Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants.  In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

> Your credit card terminal is now-or will soon be required by law or the bankcard associations to truncate-or limit-the information that can appear on electronically printed sales receipts.

> What that means is that on all cardholder numbers: * * * *

> o     All but the last four numbers of the card number must be obscured....

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 45 and, therefore, denies the same. Further answering, Paragraph 45 refers to a pamphlet.  The pamphlet is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

46.     In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

> **Make every transaction a safe one.** * * *

> o     The cardholder's receipt should not include the card's expiration date and ***should only include*** the last 4 or 5 digits of the card number. * * * *

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 46 and, therefore, denies the same.     Further

11

answering, the allegations of Paragraph 46 refer to a second pamphlet. The second pamphlet is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

47.    Another credit card processor, Commerce Bank, sent "Merchant Compliance Awareness" notices to its customers during 2004. These stated that all but the last four digits of the cardholder account number had to be suppressed from the receipt.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 47 and, therefore, denies the same. Further answering, the allegations of Paragraph 47 refer to notices. Any such notices are the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

48.    Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and, therefore, denies the same. Further answering, the allegations of Paragraph 48 refer to a newsletter.

49.    The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> [A]ccording to the FACTA Act, 'no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction....'

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 49 and, therefore, denies the same. Further answering, the allegations of Paragraph 49 refer to a newsletter and a magazine. These

documents are the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

50.     In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding requirements for credit card truncation, which stated:

> [T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals....

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and, therefore, denies the same.    Further answering, the allegations of Paragraph 50 refer to a newsletter.    The newsletter is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

51.     After the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately.    This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card account number and the expiration date from the sales receipt.    For example: A non-truncated receipt would list:
>
> Acct. # 1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:
>
> Acct. # **** **** **** 3210 Exp ****....
>
> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale....

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 51 and, therefore, denies the same.    Further answering, the allegations of Paragraph 51 refer to a written document.  This document is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

52.    In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 52 and, therefore, denies the same.    Further answering, the allegations of Paragraph 52 refer to a newsletter.  The newsletter is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

53.    Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 53 and, therefore, denies the same.

54.    The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act."  In relevant part, this publication stated:

> Under the FACT Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 54 and, therefore, denies the same.    Further

14

answering, the allegations of Paragraph 54 refer to a report.  The report is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

55.    The November 18, 2004 edition of the Compliance Challenge, published by the Credit Union National Association News, stated:  "FACTA prohibits anyone that accepts credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction...."

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 55 and, therefore, denies the same.  Further answering, the allegations of Paragraph 55 refer to a publication.  The publication is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

56.    In the October 10, 2003 edition of the PT Bulletin, a newsletter for the American Physical Therapy Association, an article appeared titled, "Truncation Requirement Now in Effect for Credit Card Processing."  In relevant part, this article stated:

Physical therapists who accept credit card payments from patients and clients face new processing requirements from major credit card companies.  In an effort to minimize opportunities for credit card fraud, Visa and MasterCard...have mandated that credit card account numbers and expiration dates be masked on all receipts.  Compliance with this requirement is not optional....

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 56 and, therefore, denies the same.  Further answering, the allegations of Paragraph 56 refer to a newsletter.  The newsletter is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

57.    The Federal Trade Commission issued a business alert in May 2007 entitled "Slip Showing?  Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information.  You may include no more than the last five digits of the card number...".

CHICAGO\2471893.1
ID\HLK

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 57 and, therefore, denies the same.    Further answering, the allegations of Paragraph 57 refer to a Federal Trade Commission publication. The publication is the best evidence of the matters stated therein, and Defendant denies any characterization inconsistent therewith.

58.    Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale.  The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc.  In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

**ANSWER:**    The <u>first</u> sentence of Paragraph 58 purports to characterize FACTA and VISA Merchant Rules, and Defendant denies any characterization that is inconsistent with FACTA or VISA's Merchant rules.  Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 58 and, therefore, denies the same.

59.    Credit and debit card account numbers are not randomly generated.  Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips. Consistent with this standard, every credit card number consists of the following:  (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) an number unique to the card; and (d) a check digit.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 59 and, therefore, denies the same.

60.    The MII identifies the industry of the issuer of the card.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 60 and, therefore, denies the same.

16

61.     The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and, therefore, denies the same.

62.     The seventh through next to the last digit, up to a maximum of 12 digits, is the number unique to the card.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 62 and, therefore, denies the same.

63.     The last digit is a "check digit" that is not randomly assigned, but instead is calculated by a defined algorithm.  Therefore, the "check digit" is derivative of the other numbers in the credit card number.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 63 and, therefore, denies the same.

64.     Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 64 and, therefore, denies the same.

65.     In addition, a would-be identity thief who steals a receipt containing the last four or five digits of a credit card account number can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder.  The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

**ANSWER:**    Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 65 and, therefore, denies the same.

66.     The costs of truncating credit and account numbers is minimal.

**ANSWER:**    Defendant denies the allegations of Paragraph 66.

67.     Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.  Defendant could have readily done the same.

CHICAGO\2471893.1
ID\HLK

**ANSWER:**     Defendant lacks knowledge and information sufficient to form a belief as to the truth of the allegations of the <u>first</u> sentence of Paragraph 67 and, therefore, denies the same.  Defendant denies the remaining allegations of Paragraph 67, and specifically denies that Defendant willfully violated FACTA.

68.     Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

**ANSWER:**     Defendant denies the allegations of Paragraph 68.

69.     The FCRA, 15 U.S.C. §1681n, provides:

**§1681n. Civil liability for willful noncompliance**

**(a) In general.   Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is liable to that consumer in an amount equal to the sum of**

> **(1)**
>
> > **(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or**
> >
> > **(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;**
>
> **(2) such amount of punitive damages as the court may allow; and**
>
> **(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.**

**ANSWER:**     Paragraph 69 purports to recite FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute.  Defendant admits that one provision of FACTA is codified as 15 U.S.C. § 1681n.

70.     The FCRA, 15 U.S.C. §1681p, provides:

**§ 1681p. Jurisdiction of courts; limitation of actions**

**An action to enforce any liability created under this title [15 USCS §§ 1681 et seq.] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of**

**(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or**

**(2) 5 years after the date on which the violation that is the basis for such liability occurs.**

**ANSWER:** Paragraph 70 purports to recite FACTA, and Defendant denies any characterization of the statute inconsistent with the language of the statute. Defendant admits that one provision of FACTA is codified as 15 U.S.C. § 1681p.

## AFFIRMATIVE DEFENSES

Defendant, Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers denies all allegations which otherwise have not been expressly admitted in this Answer. Additionally, Defendant asserts the following Affirmative Defenses. Defendant does not assume the burden of proof on these defenses where substantive law provides otherwise.

1.    Plaintiff lacks standing to bring this action.

2.    Section 1681c(g) does not afford a private right of action.

3.    The language of Section 1681c(g) is vague and ambiguous, and therefore violates the U.S. Constitution.

4.    Any purported damages to Plaintiff or the putative class members were not proximately caused by any acts or omissions of Defendant and are the result of the actions or omissions of a third party.

5.    On information and belief, Plaintiff and the putative class members failed to mitigate any damages.

6.      Any award of statutory and/or punitive damages to the alleged class would be grossly disproportionate to any actual injury sustained by Plaintiff or any class member and would, therefore, deny Defendant its rights under the Due Process and Excessive Fines clauses of the United States Constitution.

7.      Plaintiff's claims are barred as the alleged acts or omissions, if any, were the result of mistake in fact or law, undertaken in good faith.

8.      Plaintiff's claims are barred by the doctrines of waiver, estoppel, consent, unclean hands, release, and ratification.

9.      Upon information and belief, claims of some putative class members may be barred by the doctrines of accord and satisfaction, estoppel, unclean hands, res judicata and/or release.

10.     The Complaint is barred by the rule of lenity.

11.     Plaintiff has failed to state any claim upon which relief can be granted.

CHICAGO\2471893.1
ID\HLK

WHEREFORE, Defendant, Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers respectfully requests this Court (1) deny certification of any class in this action; (2) enter judgment in favor of Defendant and against Plaintiff; (3) award to Defendant its costs incurred in defending this action as allowed by law; and (4) grant it such further relief as this Court deems just and equitable.

Dated:  July 24, 2008

Respectfully submitted,

ROGERS ENTERPRISES, INC., d/b/a
ROGERS & HOLLANDS JEWELERS


By:  /s/Heather L. Kramer
                    One of Its Attorneys

Patrick T. Stanton (#616899)
Heather L. Kramer (#6272559)
Jennifer Zlotow (#6280106)
Dykema Gossett PLLC
180 North La Salle, Suite 2700
Chicago, IL  60601
(312) 627-4600

CHICAGO\2471893.1
ID\HLK

## <u>CERTIFICATE OF SERVICE</u>

I, Heather L. Kramer, one of the attorneys for Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers, hereby certify that on July 24, 2008 the ***Answer And Affirmative Defenses To Plaintiff's First Amended Complaint*** was filed with the Clerk of the District Court using the court's CM/ECF System, which will provide electronic notification of such filing to the following:

> Daniel Edelman
> Cathleen M. Combs
> James O. Latturner
> Cassandra P. Miller
> Edelman, Combs, Latturner & Goodwin, LLC
> 120 S. LaSalle Street, 18th Flr.
> Chicago, IL  60603

By: /s/ Heather L. Kramer_____
      One of its Attorneys

CHICAGO\2471893.1
ID\HLK