**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER WOODS, individually and on behalf of a class, <br><br> Plaintiff, <br><br> v. <br><br> ROGERS ENTERPRISES, INC., d/b/a ROGERS & HOLLANDS JEWELERS, and DOES 1-10, <br><br> Defendants. | 08 C 49 <br> Judge Kendall <br> Magistrate Judge Mason |

**ROGERS ENTERPRISES, INC'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**
**(Redacted Version)**

Patrick T. Stanton (#616899)
Heather L. Kramer (#6272559)
Jennifer Zlotow (#6280106)
Dykema Gossett PLLC
180 North La Salle, Suite 2700
Chicago, IL  60601
(312) 627-4600

Defendant Rogers Enterprises, Inc. d/b/a Rogers & Hollands Jewelers ("Rogers & Hollands") opposes Plaintiff's Renewed Motion for Class Certification. In November 2007, Plaintiff Christopher Woods ("Plaintiff" or "Woods") purchased an engagement ring at a Rogers & Hollands store at the Yorktown Center in Lombard, Illinois. He paid with his Rogers & Hollands in-house credit card and received a receipt that displayed more than the last five digits of his Rogers & Hollands credit card number. Since receiving that receipt, Plaintiff has not suffered any actual injury and has not been a victim of credit card fraud or identity theft.

Nevertheless, Plaintiff now seeks statutory damages under the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") on behalf of himself and others who received similar receipts. Specifically, based on the size of the proposed class, Plaintiff presently seeks as much as $777,000 in statutory damages, even though neither the Plaintiff nor any of the purported class members has suffered or can suffer any harm or even a risk of harm from the printing on a receipt of more than five digits from the Rogers & Hollands in-house credit card. In light of the nature of the Rogers & Hollands in-house card, it is simply not possible for Plaintiff to suffer any damages due to the printing of receipts that contain more than five digits of a person's in-house credit card number. Any statutory award, therefore, is necessarily and grossly disproportionate to the actual harm or risk of harm faced by the class or Plaintiff. In such circumstances, the certification of a class is not a superior method to adjudicate the controversy under Fed. R. Civ. P. 23(b)(3).

Further, Plaintiff is not an appropriate representative of the putative class under Fed. R. Civ. P. 23(a)(4). Not only does his proposed representation present a conflict of interest, but also he lacks the sufficient judgment and capacity to adequately protect the class. Accordingly, the requirements of Fed. R. Civ. P. 23 have not been met, and this Court should deny Plaintiff's motion to certify a class.

## BACKGROUND

### The Law: FACTA

Plaintiff brings this action pursuant to Section 1681c(g)(1) of the Fair and Accurate Credit Transactions Act ("FACTA"), an amendment to the Fair Credit Reporting Act ("FCRA"), which provides:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5

1

>digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.  15 U.S.C. §1681c(g)(1).

Any person who "willfully fails to comply" with this requirement, is liable under FCRA for "actual damages" or statutory damages of "not less than $100 and not more than $1,000." Punitive damages and attorney's fees are also available under FCRA.  15 U.S.C. §1681n(a).

On June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 went into effect, which provided that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [enacted June 3, 2008] . . . shall not be in willful noncompliance . . .."  Pub. L. No. 110-241, §3(a), 122 Stat. 1565-66 (2008) (codified at 15 U.S.C. § 1681n(d)).  In passing the bill, Congress specifically found that after the passage of FACTA, merchants misunderstood its requirements, and hundreds of lawsuits were filed thereafter based on the failure to remove all but the last five digits of a person's credit card number *and* the expiration date.  Pub. L. No. 110-241, §3(a), 122 Stat. at 1565.  Congress further found that not a single one of these lawsuits "contained an allegation of harm to any consumer's identity" and created a "significant burden" on businesses.  *Id.*  Accordingly, Congress passed the Credit and Debit Card Receipt Clarification Act of 2007 for the purposes of "ensur[ing] that consumers suffering from any ***actual harm*** to their credit or identity are protected while simultaneously limiting ***abusive lawsuits*** that do not protect consumers but only result in ***increased cost*** to business and potentially increased prices to consumers."  *Id.*  (emphasis added).  Based on this language, it is clear that Congress' intention behind FACTA (as amended) is to protect those consumers with actual harm, not to give a windfall to attorneys or destroy businesses.

**The Purported Violation**

Plaintiff alleges that after making a purchase at a Roger & Hollands retail store on November 23, 2007, at Yorktown Center in Lombard, Illinois, he was provided a receipt containing eight digits of his Rogers & Hollands in-house credit card. (**Exhibit 1,** *Am*. Complt.

¶17; *see also* **Exhibit 2,** the 11/23/07 Receipt[1]; **Exhibit 3**, Woods Dep. Tr. pp. 28-29, 63-65.) The first eight digits of Plaintiff's in-house credit card were hidden or "masked" or "truncated," but the last eight were not. Thus, Plaintiff claims that Rogers & Hollands' failure to truncate the last eight digits of his in-house credit card number was a willful violation entitling him to damages under FACTA, 15 U.S.C. §1681n.

### The Proposed Class

Pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), Plaintiff seeks to certify a class defined as "all persons to whom [Rogers & Hollands] provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring at its Yorktown Center location after December 4, 2006, which receipt displays more than the last five digits of the person's credit card or debit card number." (**Exhibit 1,** Am. Complt. ¶¶18, 19; Mot., p. 1.)

### There Is No Actual Injury

Neither Plaintiff nor any member of the proposed class has or will suffer any injury. In fact, Plaintiff never communicated any problem to Rogers & Hollands with respect to the receipts he received, even though he realized at the time of his purchase that the receipt was not truncated. (**Exhibit 3**, Woods Dep. Tr. pp. 38-39; **Exhibit 4,** Woods Resps. to Interrogs., No. 5; **Exhibit 5,** T. Rodrigue Decl. ¶17.) Plaintiff does not allege that he is a victim of credit card fraud or identity theft, or any other actual injury. Although he claims to represent people who suffered an actual injury, Plaintiff specifically denies that he suffered any actual damages. (**Exhibit 2,** Woods Dep. Tr. p. 50.) At his deposition, Plaintiff admitted that no one has fraudulently used his Rogers & Hollands credit card number and he has not suffered any actual injury or damages. (**Exhibit 2,** Woods Dep. Tr. pp. 50, 51.)

With respect to the putative class, there is no allegation of any identity theft, credit card fraud, or any other actual injury or actual damages arising from the printing of the last eight digits of their in-house credit card number on a receipt. Rogers & Hollands never received a complaint from any cardholder in this regard either. (**Exhibit 5,** T. Rodrigue Decl. ¶ 17.)

---

[1] This exhibit and exhibit A attached to Tina Rodrigue's Declaration are subject to the Protective Order entered in this matter. Thus, Defendant's Opposition Brief has been e-filed in a redacted form with the Clerk of Court by excluding these exhibits. Only Judge Kendall and Plaintiff's counsel have been provided with an unredacted version of the Defendant's Opposition Brief.

3

**Plaintiff Seeks Only Statutory Damages**

Rather than allege or seek any actual damages, Plaintiff seeks for himself and the proposed class "[s]tatutory damages," and "attorney's fees, litigation expenses, and costs" under section 1681n(a) of FCRA. (**Exhibit 1,** Am. Complt., p. 14).  Section 1681n(a) provides in pertinent part:

**(a)    In general**

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –

**(1)(A)**  any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;

\* \* \*

**(3)**  in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.  15 U.S.C. §1681n(a)(1)(A) and (3).

**The Potential Statutory Damages Sought By Plaintiff**

Upon learning about FACTA from the filing of this lawsuit in January 2008, Kim Schunke, the Director of Information Technology at Rogers & Hollands, immediately contacted Rogers & Hollands' software provider Jewelry Computer Systems to make the changes necessary to ensure that only the last four digits of Rogers & Hollands in-house credit card number appear on an electronically printed receipt. (**Exhibit 6,** K. Schunke Decl., ¶¶6-7.)  These changes were completed and implemented by January 28, 2008.  (**Exhibit 6,** K. Schunke Decl., ¶¶8-9; *see also* **Exhibit 7**, Rogers & Hollands' Supp. Resp. to Interrogs., No. 6.)   From December 4, 2006 through January 27, 2008, there were approximately 777 individuals who were issued receipts containing more than the last five digits of their Rogers & Hollands in-house credit card number at the Rogers & Hollands location at the Yorktown Center in Lombard, Illinois.  (**Exhibit 7**, Rogers & Hollands' Supp. Resp. to Interrogs, No. 6.)  Based on these 777 transactions at the Yorktown Center store only, the potential range of statutory damages Plaintiff seeks in a class action is between $77,700 and $777,000.

**There is No Risk Of Identity Theft Or Credit Card Fraud**

At the time of his November 23, 2007, purchase, Woods applied for and received a Rogers & Hollands credit card account.  (**Exhibit 3,**  Woods Dep. Tr. p. 30).  Woods filled out

and signed an application for the Rogers & Hollands credit card at the Yorktown Center Rogers & Hollands location in Lombard, Illinois. (**Exhibit 3,** Woods Dep. Tr. pp. 28, 30-31; **Exhibit 5,** T. Rodrigue Decl. ¶¶6-7, Ex. A). Woods was granted a credit account with Rogers & Hollands with a limit of $1,500. (**Exhibit 3,** Woods Dep. Tr. pp. 30, 32). Woods purchased the engagement ring using $1,453.42 of his $1,500 credit available on his new Rogers & Hollands credit card account for which he received a receipt. (**Exhibit 3,** Woods Dep. Tr. 28-30, 63-65; **Exhibit 2**, the 11/23/07 Receipt.) Thus, at the time his receipt was issued, he had $46.58 of credit available on his Rogers & Hollands credit account.

Woods admits that his Rogers & Hollands credit card could only be used to purchase goods or services from a Rogers & Hollands store. (**Exhibit 3,** Woods Dep. Tr. pp. 37, 41; *see also* **Exhibit 5,** T. Rodrigue Decl. ¶11.) Consequently, in the event someone had been able to determine Woods' full Rogers & Hollands credit card number from the receipt that was issued on November 23, 2007, that person could only use that credit card number to purchase goods or services from Rogers & Hollands to the extent that Woods had any available credit, which at the time was less than fifty dollars. (**Exhibit 3,** Woods Dep. Tr. p. 41; *see also* **Exhibit 5**, T. Rodrigue Decl. ¶12.) Not surprisingly, Woods denies that he has any actual damages flowing from the issuance of the credit card receipt on November 23, 2007. (**Exhibit 3,** Woods Dep. Tr. p. 50).

Nor can Woods even claim that he was at a risk of suffering an actual injury. Even though Woods admits that no one has used his Rogers & Hollands credit card number fraudulently to purchase goods (**Exhibit 3,** Woods Dep. Tr. p. 51), in the event that a person other than Woods were to purchase goods or services from Rogers & Hollands using Woods' credit card number, Woods or any other customer would not be required to pay Rogers & Hollands for said fraudulent purchase. (**Exhibit 3,** Woods Dep. Tr. pp. 40, 41; **Exhibit 5,** T. Rodrigue Decl. ¶¶13-16.) Thus, Woods could not suffer any loss, damages or injury as a result of Rogers & Hollands printing more than five digits of his credit card number because the credit card account number.

Moreover, Plaintiff has not shown how the printing of the last eight digits of a Rogers & Hollands in-house credit card could result in identity theft or an increased risk of identity theft. Plaintiff himself testified that he is not aware of how someone could use the last eight digits of his Rogers & Hollands credit card number and steal his identity. (**Exhibit 3,** Woods Dep. Tr. pp.

5

42-43.) Plaintiff's responses to interrogatories do not identify anyone who will testify that the presence of eight digits on an in-house credit card will result in identity theft or increase the risk of identity theft. Rather, Plaintiff identified only "employees of Defendant" and "employees of Visa" as potential witnesses and persons with knowledge, none of whom can testify that the display of only the last eight digits of Rogers & Hollands *in-house* credit card number on a receipt creates a risk of identity theft (**Exhibit 7,** Woods' Supp. Resp. to Interrogs., Nos. 1, 18*; see also* **Exhibit 5**, T. Rodrigue Decl. ¶18.) Finally, the unauthenticated, hearsay articles and documents that Plaintiff produced during discovery and attached to its Motion to allegedly support his claims do not even discuss how a ***partial, in-house*** credit card number could be used to effectuate identity theft.

## ARGUMENT

It is Plaintiff's burden to prove that class certification is appropriate. *Ret. Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). "[A] decision to certify a class action rests in the discretion of the district court …." *J.H. Cohn & Co. Self-Employment Ret. Trust v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 998 (7th Cir. 1980). "Students of [Fed. R. Civ. P. 23(b)(3)] have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature." *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972). "A class action 'may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of the rule governing class actions have been satisfied.'" *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 395 (N.D. Ill. 2006), *citing Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). *See also King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25 (7th Cir. 1975) ("Determination of the manageability of class actions is, once Rule 23 is properly applied, a matter for the trial court's discretion. This is true for all class actions.") (citations omitted).

Plaintiff bases his motion for class certification on Rule 23(b)(3). They argue that "[a] class action is superior for the fair and efficient adjudication of the class members' claims" (Mot., ¶15; *see also* Mem., pp. 12-14; **Exhibit 1**, Am. Complt., ¶25.) The predominance and superiority requirements of Rule 23(b)(3) are "far more demanding" than is rule 23(a)(2)'s commonality requirement. *Hyderi*, 235 F.R.D. at 404, *quoting Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

This Court should exercise its discretion and deny Plaintiff's motion to certify for the overwhelming reason that a class action cannot be superior to other available methods for fairly and efficiently adjudicating this controversy.

I. **A Class Action Is Not A Superior Method To Fairly And Efficiently Adjudicate This Controversy.**

   A. **Due To The Lack Of Any Injury Or Even Risk Of Injury To Plaintiff Or Any Member Of The Putative Class, A Class Action Is Simply Not The Proper Mechanism To Resolve This Dispute.**

Due to the lack of any actual damages to Plaintiff or the putative class members, any statutory damages awarded will be grossly disproportionate to any actual harm. Indeed, even the minimum award of $100 per consumer (totaling $77,700) would be $77,700 more than any injury Woods or any class member could suffer. Courts consistently recognize that a severe disparity between statutory damages and actual injury makes class certification inappropriate. The leading case on this issue is *Ratner v. Chemical Bank,* 54 F.R.D 412 (S.D.N.Y. 1972), in which the court refused to certify a class for statutory damages for violations of the Truth in Lending Act of 1968. Judge Frankel – one of the "architects" of Rule 23[2] – concluded that a class action was not superior under Rule 23(b)(3) because:

> (1) the incentive of class-action benefits is unnecessary in view of [TILA's] provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, ***unrelated to any damage to the purported class or to any benefit to defendant***, for what is at most a technical and debatable violation of [TILA]. *Id*. at 416. (emphasis added).

These factors considered by Judge Frankel have also been used by the Seventh Circuit. In particular, in *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974), the Court affirmed that:

> procedural fairness with respect to protecting defendants from crushing damages predicated on the statutory minimum recovery ***is an important consideration*** in determining the superiority of the class action mode of adjudication … . 503 F.2d at 1164 (emphasis added).

---

[2] *See In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 348 (N.D. Ill. 2002).

7

The *Haynes* Court conducted its analysis as follows:

> In evaluating the appropriateness and desirability of class action status in this particular case, *we deem it <u>highly significant</u> that here, unlike Ratner …, actual damages were alleged*. In the installment sales transactions at issue, [defendant] had in fact imposed a finance charge and applied an interest rate. *Id*. at 1165 (citations omitted).

*See also Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 15 (7th Cir. 1976) ("***We deemed it "highly significant" [in Haynes] that there were actual damages alleged.***") (emphasis added)*; Trans Union*, 211 F.R.D. at 350 ("*the <u>most important</u> factor*" is the allegation of actual damages or the lack of such an allegation) (emphasis added). Even though the Seventh Circuit ultimately found that class certification was appropriate in those instances, where there were allegations of actual damages, they are distinguishable from the matter at hand in which Woods has alleged no damages and admits that none are possible.

    Rather, this case is in line with *Trans Union*, in which this Court denied certification of a class asserting FCRA violations based on the disparity between potential statutory damages and the actual harm that the conduct at issue could have caused:  "even the minimum statutory recovery of $100 far exceeds any actual damages suffered by plaintiffs."  211 F.R.D. at 350.  The Court also noted that whether actual damages had been alleged was the "most important factor" in deciding whether to certify a class.  *Trans Union*, 211 F.R.D. at 350.  *See also, Klay v. Humana, Inc.,* 382 F.3d 1241, 1271 (11th Cir. 2004), quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) ("'[w]here the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff,' we are likely to find that individual suits, rather than a single class action, are the superior method of adjudication.")  Similarly, that same disparity exists here, and is a legitimate basis to deny class certification.

    Plaintiff carefully avoids the principle, affirmed in *Haynes, Goldman* and *Trans Union*, that procedural fairness with respect to the prospect of substantial damages predicated on a statutory minimum recovery in the absence of any actual damages is a "highly significant" consideration in determining the superiority of the class action mode of adjudication.  *Haynes*, 503 F.2d at 1164; *Goldman*, 532 F.2d at 15; *Trans Union,* 211 F.R.D. at 350.  Plaintiff cites *Haynes* in his memoranda, but he fails to make any mention of the Seventh Circuit's analysis in

*Haynes* in this regard, or the analysis in *Ratner* discussed extensively by the court in *Haynes* (Mem., p. 13.)

Instead, to avoid the principles enunciated in *Haynes*, *Goldman, Ratner*, and *Trans Union,* Plaintiff looks solely to *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) for support. (Memo. at pp. 3, 4, 12.) *Murray*, however, did not involve, and the court did not discuss, the distinct issues considered in *Haynes*, *Goldman, Trans Union,* and *Ratner*. The *Murray* court does not even mention those cases. Rather, the court in *Murray* addressed whether substantial damages, ***and that factor standing alone***, is a basis to deny class certification. *Id*. at 953. The court in *Murray* did not address the situation presented in *Ratner*, where: (i) statutory minimum damages would be substantial ***and*** (ii) statutory minimum damages would be entirely "unrelated to any damage to the purported class or to any benefit to defendant." *Ratner*, 54 F.R.D. at 416. *See also Trans Union*, 211 F.R.D. at 351 ("Although certification should not be denied ***solely*** because of the possible financial impact it would have on a defendant, consideration of the financial impact is proper when based on the disproportionality of a damage award that has little relation to the harm actually suffered by the class, and on the due process concerns attended upon such an impact.") (emphasis added).

Moreover, the underlying premise supporting the Court's position in *Murray* is not applicable to the circumstances of Woods' case. Specifically, Plaintiff cites the following language from *Murray*:

- "That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." *Murray,* 434 F.3d at 953.

- "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray,* 434 F.3d at 953.

These rationales that the *Murray* court cites in favor of certifying a class action are not applicable to the instant matter. First, there is no actual loss that is too small or too hard to quantify, because there is none, nor can there be.[3] Woods admitted that he has not suffered any

---

[3] *Murray* involved a claim that the defendant unlawfully accessed Plaintiff's credit report. *Murray,* 434 F.3d at 950-51. While the court accurately noted that damages would be hard to prove, the plaintiff had certainly plead an arguable injury, *i.e.*, a violation of his privacy by reviewing his otherwise confidential information. No such claim of a privacy violation exists in this case.

9

loss.  Further, he admitted that if his Rogers & Hollands credit card account were ever used fraudulently, he would not be held accountable for such charges by Rogers & Hollands. (**Exhibit 3,** Woods Dep. Tr. p. 40.)  This is confirmed by employees of Rogers & Hollands. (**Exhibit 5,** T. Rodrigue Decl. ¶¶13-16.)  Nor can he present any evidence that the last eight digits of his Rogers & Hollands in-house card could be used to steal his identity.  *See infra,* at pp. 5-6.  In sum, Woods cannot establish that there is even a small risk of injury that would justify the certifying of a class action.

Second, there is no substantial injury in the aggregate, in light of the fact that there was no current or potential injury to any single member of the putative class.  The situation of the putative class members is no different from that of Woods.  They, too, have not suffered any actual injury.  Nor will they be liable for any fraudulent charges to their Roger & Hollands accounts.  As there is no substantial injury individually or in the aggregate, the Seventh Circuit's holding in *Murray* does not apply to this context.

Due to the unique circumstances of this case, where the alleged FACTA violation pertains only to Rogers & Hollands in-house credit card, it can be established with certainty that neither the Plaintiff nor any of the putative class members have or will be harmed from the printing of more than the last five digits of their Rogers & Hollands credit card.  Any loss occasioned by the alleged using of such numbers will fall to Rogers & Hollands, not Plaintiff or any other cardholders.  As a result, this case is distinguishable from *Murray,* as well as those FACTA cases which followed *Murray* and upon which Plaintiff relies.  None of those cases deals with the printing of more than the last five digits of an **in-house** credit card number and the impossibility of any damages resulting therefrom.  *See, e.g., Halperin v. Interpark Inc.,* 2007 U.S. Dist. LEXIS 87851 (N.D. Ill. Nov. 29, 2007)[4]; *Troy v. Red Lantern Inn, Inc.*, 2007 U.S. Dist. LEXIS 89004 (N.D. Ill Dec. 4, 2007);  *Meehan v. Buffalo Wild Wings*, *Inc.*, 29 F.R.D. 284 (N.D. Ill. 2008); *Redmon v. Uncle Julio's Hacienda.,* 249 F.R.D. 290 (N.D. Ill. 2008); *Harris v. Best Buy Co.*, 2008 U.S. Dist. LEXIS 22166 (N.D. Ill. March 20, 2008); *Cicilline v. Jewel Food Stores*, 542 F. Supp. 2d 831 (2008).

Again, due to the grave disparity between actual injury ($0.00) and a statutory award under FCRA ($77,700 to $777,000), a class action is simply not a superior method to fairly and

---

[4] All unpublished cases cited herein are attached in alphabetical order at **Exhibit 9.**

efficiently adjudicate this controversy. Therefore, this Court should deny Plaintiff's motion for failing to satisfy the superiority requirements of F. R. Civ. P. 23(b)(3).

### B.   Individual Actions Will Fairly And Efficiently Adjudicate The Controversy Presented, And The Incentive Of Class-Action Benefits Is Not Necessary

Plaintiff argues that "[i]ndividual actions are uneconomical" (Mot., ¶15(b)).  He suggests that potential class members will lack the initiative to litigate. (Mem., p. 13.)  This argument fails because, to the extent Section 1681c(g) provides a private right of action, Congress provided ample incentives for individuals to prosecute actions to enforce their rights.

"When assessing superiority, a district court must 'consider what other procedures, if any, exist for disposing of the dispute before it.'" *Hyderi*, 235 F.R.D. at 403-04, citing Wright & Miller, *Federal Practice and Procedure*, Vol. 7AA, Civil 3d §1779.  In *Hyderi*, Judge Filip rejected plaintiff's claim that class certification was appropriate because individual claims may be too small to support individual actions – a concept the court referred to as a "negative value suit." 235 F.R.D. at 404.  The court acknowledged that "if there really were no incentive for a litigant to bring a meritorious individual claim, then that obviously would be a substantial concern." *Id*.

A lack of incentives is not a concern in a case such as this, because FCRA, 15 U.S.C. §1681n, provides ample incentives for individual plaintiffs to sue.  It provides consumers with a statutory minimum recovery between $100 to $1000 for each willful violation of FACTA, plus punitive damages, attorneys fees, and costs.  15 U.S.C. §1681n(a)(1)(A), (2), and (3).  There is also no statutory cap to the amount of actual damages a person can recover.  In addition, even if a plaintiff fails to prove willfulness and cannot recover statutory damages, the plaintiff establishing a negligent violation is entitled to recover actual damages as well as attorneys fees and costs.  15 U.S.C. §1681o(a)(2).

Such incentives were in front of the court in *Hyderi*, which considered a similar provision under the Real Estate Settlement Procedures Act ("RESPA").  The court noted that the potential lack of incentive was not lost on Congress, "which provided for attorneys fees, costs, and the potential for statutory damages of up to $1,000, irrespective of whether a RESPA plaintiff ever suffered any actual harm.  *See* 12 U.S.C. §2605(f).  (Actual damages, of course, are recoverable if there were any.)." 235 F.R.D. at 404.  The *Hyderi* Court held that "[p]recedent teaches that the availability of statutory damages plus the ability to recover attorneys fees and costs ***provides***

11

*substantial incentives* to bring meritorious individual suits." 235 F.R.D. at 404 (emphasis added)(collecting cases); *See also Gardner v. Equifax Info. Servs. LLC*, Civil No. 06-3102 ADM/AJB, 2007 U.S. Dist. LEXIS 57416 at *19 (D. Minn. Aug. 6, 2007) (under FCRA, "[t]he attorney's fee provision, allowing harmed individuals to pursue meritorious claims without incurring financial detriment, weighs against a finding of class action superiority over other litigation mechanisms."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) (holding that class action was not superior due to lack of the case being a negative value suit); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 456 (E.D. Pa. 2000) ("ability to recover attorneys' fees … belies the projected problems of a negative value suit, and offsets the potential costs associated with individual litigations for relatively small amounts").

Likewise, in the context of FCRA, Congress provided consumers with the incentives to bring their own personal actions as set forth in 15 U.S.C. §1681n. Accordingly, Plaintiff has the burden to establish superiority, independent of predominance or any other class action criteria. *Hyderi*, 235 F.R.D. at 406. It is inconceivable, based on the facts before this Court, that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy as required by Rule 23(b)(3). For this reason alone, Plaintiff's motion for class certification should, therefore, be denied.

## II.     Plaintiff Christopher Woods Cannot Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) also requires that the Plaintiff establish that the "representative parties will fairly and adequately protect the interests of the class." To satisfy the requirements of Rule 23(a)(4), a plaintiff must show 1) he does not have antagonistic or conflicting claims with other members of the class; 2) he has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and 3) his counsel is competent, qualified, experienced and able to vigorously conduct the litigation. *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999). Plaintiff has failed to establish these requirements.

First, Woods cannot ensure the vigorous prosecution of this litigation due to his lack of knowledge of the most basic features of his case. A class must have a "conscientious representative plaintiff." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991). The class representative must "understand the basic facts underlying [her] claims." *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996). "General knowledge and participation in

discovery are sufficient to meet this standard." *Id.* (citations omitted). During his deposition, Woods demonstrated that he fails to meet this standard.

- First, he does not even recall whether he reviewed the amended complaint in this matter. (**Exhibit 3**, Woods Dep. Tr. pp. 24-25.)
- Second, he does not even know who he is representing as class representative. Even though he claims to have reviewed the original complaint, Woods did not even know that he is only seeking to represent consumers who made purchases at the Rogers & Hollands location in Lombard as opposed to those consumers who made purchases at any of the other Rogers & Hollands locations. (**Exhibit 3,** Woods Dep. Tr. pp. 20-22, 61.)
- Nor does Woods know why he is only representing customers of the Lombard store. (**Exhibit 3,** Woods Dep. Tr. p. 61.)
- Finally, Woods was not even aware that those putative class members with "actual damages," who he purports to represent, need only establish negligence with respect to Rogers & Hollands' actions, whereas someone like him who has no damages must meet the higher standard of willfulness. (**Exhibit 3,** Woods Dep. Tr. pp. 50, 55; *see* 15 U.S.C. §§1681n, 1681o.)

Woods' failure to understand these basic facts concerning the class he represents makes him an inadequate person to represent the interest of the purported class members. *See Forrest v. Shenandoah Valley Nat'l Bank*, 2007 U.S. Dist. LEXIS 22821, at *10-12 (E.D. Wis. Mar. 28, 2007). Accordingly the Court should deny certification of the class under Rule 23(a)(4).

Second, the testimony at Woods' deposition demonstrates that he lacks the necessary judgment to oversee this lawsuit. He has been arrested for driving under the influence on three occasions. The last time was as recent as 2005. For that arrest, he received a sentence of two weeks in the DuPage County jail. (**Exhibit 3,** Woods Dep. Tr. pp. 17-20.) Such repeated bad decision-making is a poor quality for a class representative to possess. Woods' judgment could also be impaired in that he suffers from alcoholism and depression for which he takes Zoloft. (**Exhibit 3,** Woods Dep. Tr. pp. 6-7, 18.) Each of these personal characteristics calls into serious question Woods' ability to make rational decisions on behalf of the purported class members. *See In re American Medical Sys.,* 75 F.3d 1069, 1083 (6th Cir. 1996) (class representative's history of psychological problems raised serious question as to his suitability to serve as a class

13

representative). Plaintiff's motion and memorandum do nothing to establish that Woods has the requisite judgment to oversee this action. (Mot. at ¶14; Memo at 11-12.)

Third, Woods' relationship with counsel for the class presents a conflict of interest. Woods testified at his deposition that he learned about FACTA from his stepfather, attorney Steven Troy. (**Exhibit 3,** Woods Dep. Tr. pp. 37-38.) Woods further testified that after receiving the credit card receipt from Rogers & Holland, he consulted with Troy, who, in turn, referred Woods to Edelman Combs & Latturner. (**Exhibit 3,** Woods Dep. Tr. p. 39.) Woods was not aware whether or not Troy would be receiving a referral fee. (**Exhibit 3,** Woods Dep. Tr. p. 39.) Woods understood, however, that Troy had referred other cases to class counsel in the past, but did not know whether Troy received a referral fee. (**Exhibit 3,** Woods Dep. Tr. p. 39.) In the course of discovery, however, Woods has claimed that there is an attorney-client relationship between himself, class counsel and his stepfather, Steven Troy. (*See* **Exhibit 7**, Woods' Supp. Resp. to Interrogs., Privilege Log). As the referring attorney, Troy, assuming he will be receiving a referral fee, "assumes the same legal responsibility for the performance of the services in question as would a partner of the receiving attorney." Illinois Rules of Professional Responsibility 1.5 (g)(2). Thus, if Troy has a referral relationship, he, in effect, is a partner of class counsel in this matter. As such, Woods, as his stepson, cannot be trusted to exercise independent judgment on behalf of the class. "Courts are properly concerned when a class representative is or appears to be prosecuting a class action for the benefit of class counsel rather than for the benefit of the class. Therefore, if a class representative if [sic] closely affiliated with class counsel, courts usually consider this to be a disqualifying conflict of interest. A representative will be inadequate when the representative has a familial relationship with class counsel…." 5 *Moore's Federal Practice*, § 23.25[2][b][iv] (Matthew Bender 3d ed.)(*citing Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90-91 (7th Cir. 1977)). Given the familial relationship between Woods and Edelman's co-counsel, Steven Troy, there is concern that Woods would have "an incentive to accept a settlement that would be unfavorable to the class but that would result in a large award of attorney's fees." *Id.*[5]

---

[5] Even if there is no formal fee splitting relationship between Troy and class counsel in this case, Troy, who is both Woods' stepfather and apparently his lawyer, clearly has a close relationship with class counsel in that he has personally retained class counsel to file other class actions on his behalf. *See, e.g,, Steven Troy v. The Red Lantern Inn*, 2007 U.S. Dist. LEXIS 89004 (N.D. Ill. December 4, 2007) (noting that Troy, who was represented by Edelman Combs & Latturner, "has filed numerous other FACTA claims, making him a professional plaintiff.")

14

Because Woods should not represent a class, the Court should deny class certification under Rule 23(a)(4).

## CONCLUSION

Plaintiff must establish that a class action is a superior means of adjudicating the controversy under Fed. R. Civ. P. 23(b)(3). Plaintiff cannot meet this burden because a class action cannot be the superior means if it exposes Rogers & Hollands to hundreds of thousands of statutory damages:

- For a violation of FACTA, a statute which Congress has already amended, because so many companies like Rogers & Hollands was either unaware of or misunderstood its requirements;

- Where there is no actual injury or risk of injury, and the express purpose of Congress' passage of the Credit and Debit Card Receipt Clarification Act of 2007 was to protect those with "actual harm" and to avoid "abusive lawsuits;"

- To remedy a practice that Rogers & Hollands immediately remedied after becoming aware of the issue;

- For a claim on behalf of a class of people, none of whom, including Woods, ever complained that there was a problem with their receipts;

- Where neither Woods nor any of the purported class members have suffered any damages; and

- Where the proposed class representative concedes that it is impossible for him or any of the purported class members to suffer any damages, because Rogers & Hollands would be liable for any fraudulent use of their in-house cards, not the class members.

In light of all these factors, the inferiority and abusive nature of the class mechanism in this case is apparent. Moreover, given his lack of knowledge of his claims and his relationship with counsel, Woods is not an adequate representative of the proposed class. Accordingly, Defendant, Rogers Enterprises, Inc. d/b/a Rogers & Hollands, respectfully requests that the Court deny the Plaintiff's Renewed Motion for Class Certification.

Dated: September 5, 2008

Respectfully submitted,

ROGERS ENTERPRISES, INC., d/b/a
ROGERS & HOLLANDS JEWELERS

By: /s/Patrick T. Stanton
    One of Its Attorneys

Patrick T. Stanton (#616899)
Heather L. Kramer (#6272559)
Jennifer Zlotow (#6280106)
Dykema Gossett PLLC
180 North La Salle, Suite 2700
Chicago, IL 60601
(312) 627-4600

CHICAGO\2511780.1
ID\PTS