# EXHIBIT 9

LEXSEE



Cited
As of: Sep 05, 2008

**MARY FORREST, Plaintiff, v. SHENANDOAH VALLEY NATIONAL BANK, Defendants.**

**Case No. 06-C-11**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN**

**2007 U.S. Dist. LEXIS 22821**

**March 28, 2007, Decided**

**CORE TERMS:** class certification, solicitation, proposed class, adequacy, class members, commonality, class action, numerosity, deposition, typicality, mailing, responded, lawsuit, class representative, certification, Fair Debt Collection Practices Act, questions of law, credit report, legal claim, conduct towards, citations omitted, provides notice, consolidating, impracticable, predominate, credibility, electronic, discovery, putative, consumer's

**COUNSEL:** [*1] For Mary Forrest, Plaintiff: J Scott Schnurer, LEAD ATTORNEY, Jason Altman, LEAD ATTORNEY, John D Blythin, LEAD ATTORNEY, Robert K O'Reilly, LEAD ATTORNEY, Richard A Lilly, Ademi & O'Reilly LLP, Cudahy, WI.

For Shenandoah Valley National Bank, Defendant: Eugene J Kelley, Jr, LEAD ATTORNEY, Jeffrey D Pilgrim, LEAD ATTORNEY, Nathan O Lundby, LEAD ATTORNEY, Sharilee K Smentek, LEAD ATTORNEY, Arnstein & Lehr LLP, Chicago, IL; Michael J Ganzer, LEAD ATTORNEY, Hodan Doster & Ganzer, Milwaukee, WI.

**JUDGES:** Rudolph T. Randa, Chief Judge.

**OPINION BY:** Rudolph T. Randa

**OPINION**

**DECISION AND ORDER**

This putative class action brought by Mary Forrest ("Forrest") against the Defendant Shenandoah Valley Bank ("Bank") under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq ("FCRA"), is before the Court on Forrest's motion for class certification. With the exception of the disposition of the class certification motion, the matter is stayed until the United States Supreme Court issues a decision in *GEICO Gen. Ins. Co. v. Edo,* 127 S. Ct. 36, 165 L. Ed. 2d 1014 (2006) (granting pet. for cert. and consolidating case) and in *Safeco Ins. of Am. v. Burr,* 127 S. Ct. 36, 165 L. Ed. 2d 1014 (2006) [*2] (granting pet. for cert. and consolidating case).

Forrest alleges that the Bank accessed her consumer credit report, without her consent or any other lawful reason, to send her a loan solicitation in violation of the FCRA. She maintains that the mailing violates 15 U.S.C. § 1681b by not offering a "firm offer of credit" within the meaning of the FCRA, which is essential when a potential creditor accesses a consumer's credit report without that person's consent.

**Motion for Class Certification**

Forrest seeks certification of a class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The proposed class is all persons with Wisconsin addresses to whom the Bank has sent solicitations in the form of Exhibit A attached to the Declaration of Jason Altman in support of the plaintiff's motion for class certification.

The Bank opposes the motion contending that Forrest does not meet all the requirements for certification of the class. Specifically, the Bank maintains that

Forrest is not a fair and adequate representative, she has not established that class issues predominate over individualized [*3] issues or that a class action is superior to other methods of adjudication.

This Court may certify a class of plaintiffs if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- and any one of the conditions of Rule 23(b). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (citing Fed. R. Civ. P. 23; *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000).) Rule 23(b)(3) adds the requirement "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The plaintiff has the burden of proving the class should be certified. *Oshana,* 472 F.3d at 513.

In evaluating a motion for class certification, the allegations made in support of certification are taken as true and, as a general matter, the court makes no inquiry into the merits [*4] of the suit. *Retired Chi. Police Ass'n. v. City of Chi.,* 7 F. 3d 584, 598 (7th Cir. 1993); The court may approve class actions only after conducting a "rigorous analysis" to ensure that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied. *General Telephone Co. of the S.W. v. Falcon,* 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

However, in evaluating a motion for class certification, it is sometimes necessary to "probe behind the pleadings" to determine whether "the interests of absent parties are fairly encompassed within the named [plaintiff's] claims." *Falcon,* 457 U.S. at 160. Indeed, to protect absent class members and defendants, this Court has an affirmative obligation to "resolv[e] factual and legal disputes that strongly influence the wisdom of class treatment." *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676 (7th Cir. 2001). Thus, instead of assuming that whatever the plaintiff alleges is true, as it would in testing the legal sufficiency of a complaint under Rule 12(b)(6), the Court may "look[] beneath the surface of [the] complaint to conduct the inquiries [*5] in [Rule 23] and exercise the discretion it confers." *Id.* Here, in addition to the allegations of the Complaint, the Court considers the affidavits that have been submitted by the parties.

### Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Forrest states that she will obtain the exact number and identities of the class members through discovery.

A class action may proceed "upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 325 (S.D.N.Y. 1982). While the number of the proposed class is not always dispositive, generally, the numerosity requirement is met if there are forty or more members. *See Chandler v. S.W. Jeep-Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D. Ill. 1995). The loan solicitation letter is a form letter. It is reasonable to believe that the form loan solicitation letter received by Forrest was mailed to hundreds, if not thousands, of individuals in Wisconsin, as part of a mass mailing campaign. *See e.g., Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir. 1983) (courts may make "common [*6] sense assumptions in order to find support for numerosity"). Nor does the Bank, the source of the solicitations, contest the numerosity of the potential class. Accordingly, the Court finds that the proposed class is so numerous that joinder would be impracticable.

### Commonality

Rule 23(a)(2) requires that there be questions of law and fact common to the class. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chi.,* 102 F.R.D. 944, 949-50 (N.D. Ill.1984)). Common nuclei of fact are typically manifest where the defendant has engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents. *See Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (regarding commonality of alleged violations of the Fair Debt Collection Practices Act and Colorado Fair Debt Collection Practices Act) (citing cases). Forrest and other proposed class members received the same or substantially similar solicitation from the Bank. Forrest's legal [*7] claim is same as that of other members of the proposed class. Thus, Forrest shares the commonality of facts and legal claims with other members of the proposed class.

### Typicality

Whether Forrest's claims are typical of those of the class members she represents is closely related to the commonality inquiry. *See Rosario,* 963 F.2d at 1018 ("The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality."). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). Forrest's claim falls within this definition. By mailing the form loan solicitation letter, the Bank engaged in the same course of con-

duct towards Forrest and the members of the proposed class. These individuals are now suing the Bank under the FCRA, alleging violations of the same statutory section under the same legal theory. Forrest meets Rule 23's typicality requirement. *See* [*8] *Keele, 149 F.3d at 595*.

### Adequacy of Representation

Rule 23(a)(4) provides that the representative parties must "fairly and adequately protect the interests of the class." Rule 23(a)(4)'s adequacy of representation requirement has two elements: "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s]' of the class members." *Retired Chi. Police Ass'n., 7 F.3d at 598* (quoting *Sec. of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986)*). Thus, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Sec. of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986)*).

A class must have a "conscientious representative plaintiff." *Rand v. Monsanto Co., 926 F.2d 596, 599 (7th Cir. 1991)*. The class representative must "understand the basic facts underlying [her] claims." *In re Discovery Zone Sec. Litig., 169 F.R.D. 104, 109 (N.D. Ill. 1996)*. "General knowledge and participation in discovery are sufficient to meet this standard. [*9] " *Id.* (citations omitted). "[I]n demonstrating a class representative's adequacy, the burden is not a heavy one." *Sledge v. Sands, 182 F.R.D. 255, 259 (N.D. Ill. 1998)* (citation omitted.)

The Bank maintains that there has been no demonstration that Forrest has a sufficient interest in the outcome of the case to ensure vigorous advocacy. The Bank states that Forrest's failure to testify at her deposition that she had filed 11 other lawsuits demonstrates a lack of credibility, a lack of reliability and a lack of interest. The Bank does not dispute the adequacy of Forrest's counsel.

The Court is familiar with Forrest's attorneys, Ademi & O'Reilly, who have litigated and are currently litigating several FCRA actions in this Court. Counsel further represent that they have litigated several FCRA cases in federal court as class counsel. There is no question that counsel is competent because it appears that this type of litigation is the bulk of their practice. The Court finds that Ademi & O'Reilly are experienced and qualified to serve as class counsel in this matter.

However, the Bank has raised a significant concern regarding the adequacy of Forrest as a class representative. [*10] For example, at Forrest's deposition, in response to the inquiry regarding whether she had sued anybody Forrest answered, "No." (Ganzer Decl. P 2 [1] Ex. C (Forrest Dep.) 8.) When the Bank's counsel reminded

her of this lawsuit, she responded "Yeah." (*Id.*) When asked, "Any others?," Forrest responded, "No" (*id.*) -- although she filed a total of 11 other cases in this district between December 20, 2005, and April 6, 2006. (Ganzer Decl. P 4 Ex. D.) No followup comment or clarification was offered by her attorney. (Ganzer Decl. P 2 Ex. C.) Forrest's counsel represents her in the 11 other actions. (Ganzer Decl. PP 5-15 Ex. E-O.)

> 1  Paragraph 2 of the Ganzer Declaration incorrectly states that the Forrest deposition transcript is attached as exhibit B. It is attached as exhibit C.

When asked to look at Exhibit A to the complaint -- the loan solicitation letter--and state what it is Forrest responded "looks like a loan." (Ganzer Decl. P 2 Ex. C at 8-9.) When asked by both the Bank's attorney and [*11] her own attorney whether she recollected the loan solicitation letter, Forrest testified "no." (*Id.* at 9.) When asked the status of this lawsuit, Forrest responded "I don't know." (*Id.*)

Review of the entire Forrest deposition transcript causes her to appear too much like a shadow plaintiff; one disinterested or unconcerned. Most troublesome is Forrest's response to the "prior lawsuit questions." Regardless of whether Forrest did not remember, made a mistake, or was not being truthful, she is not a fitting representative for the class.

Based upon Forrest's deposition testimony, the Court concludes that Forrest lacks adequate knowledge and understanding of the case and has enough of a credibility problem that she cannot adequately represent the class. *See Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983); Kaplan v. Pomerantz, 132 F.R.D. 504, 510-11 (N.D. Ill. 1990)*. Therefore, Forrest's motion for class certification is denied.

Given the Court's conclusion, it need not resolve the remaining question under Rule 23(b)(3), which provides that for a class to be certified, the Court must find that "a class action is superior to other [*12] available methods for the fair and efficient adjudication of the controversy." However, satisfaction of that requirement would not be problematic in this case. *See Murray v. GMAC Mortg. Corp. 434 F.3d 948, 953 (7th Cir. 2006)*.

### Conclusion

The case was stayed with the exception of the ruling on the class certification motion. With the issuance of this Court's ruling, it is now appropriate for the Court to direct the Clerk of Court to close this action for statistical purposes until one or both of the parties provides notice to the Court by electronic filing promptly upon receipt of

the Supreme Court's ruling in *GEICO Gen. Ins. Co.* and *Safeco Ins. Co.*

**NOW, THEREFORE, BASED ON THE FOREGO-ING, IT IS HEREBY ORDERED THAT:**

1. Forrest's motion for class certification (Docket No. 18) is **DENIED.**

2. The Clerk of Court is instructed to submit a JS-6 form to the administrative office thereby closing the case for statistical purposes; and,

3. Nothing in this order shall be considered a dismissal or disposition of this matter and one or both of the parties shall provide notice to the Court by electronic filing promptly upon receipt of the Supreme [*13] Court's ruling in *GEICO Gen. Ins.Co. v. Edo,* 127 S. Ct. 36, 165 L. Ed. 2d 1014 (2006) and *Safeco Ins. Co. of Am. v. Burr,* 127 S. Ct. 36, 165 L. Ed. 2d 1014 (2006).

Dated at Milwaukee, Wisconsin this 28th day of March, 2007.

**BY THE COURT**

s/ Rudolph T. Randa

**Chief Judge**

LEXSEE

**Joan Lockhart Gardner and Susan Bofferding, on behalf of themselves and all others similarly situated, Plaintiffs, v. Equifax Information Services, LLC, Defendant.**

**Civil No. 06-3102 ADM/AJB**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

**2007 U.S. Dist. LEXIS 57416**

**August 6, 2007, Decided**
**August 6, 2007, Filed**

**CORE TERMS:** class member, consumer's, actual damages, class actions, class certification, proposed class, adequacy, opt-out, reply, typicality, reporting, communicated, zip codes, commonality, objectively, willfulness, credit reports, ascertainable, fulfillment, questions of law, statutory damages, attorney fees, reasonableness, individualized, reinvestigate, predominance, superiority, inaccuracy, class-wide, fulfilled

**COUNSEL:** [*1] Thomas J. Lyons, Jr., Esq., Consumer Justice Center, P.A., Vadnais Heights, MN, on behalf of Plaintiffs.

Barry Goheen, Esq., King & Spalding LLP, Atlanta, GA, on behalf of Defendant.

**JUDGES:** Ann D. Montgomery, U.S. DISTRICT JUDGE.

**OPINION BY:** Ann D. Montgomery

**OPINION**

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On June 20, 2007, oral argument before the undersigned United States District Judge was heard on Plaintiffs Joan Lockhart Gardner ("Gardner") and Susan Bofferding's ("Bofferding") (collectively, "Plaintiffs") Motion for Class Certification [Docket No. 15]. In their Amended Complaint [Docket No. 27], Plaintiffs, on behalf of themselves and all other individuals similarly situated, allege a claim for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i, against Defendant Equifax Information Services, LLC ("Equifax").

**II. BACKGROUND**

**A. Motion for Class Certification**

Plaintiffs seek class certification on behalf of themselves and others similarly situated for a claim based on Equifax's alleged violations of the FCRA. Am. Compl. P 44; Gardner Decl. [Docket No. 20] P 4; Bofferding Decl. [Docket No. 21] P 16. Specifically, Plaintiffs allege Equifax violated the FCRA by failing to fulfill its statutorily [*2] imposed duty to reinvestigate alleged inaccuracies in consumer credit reports upon receipt of a dispute communicated by Plaintiffs. Am. Compl. P 44; Gardner Decl. P 3; Bofferding Decl. P 15; see 15 U.S.C. § 1681i (2006). Both Bofferding and Gardner seek to represent the proposed class. Gardner Decl. P 7; Bofferding Decl. P 19. Plaintiffs request relief in the form of statutory damages, attorney fees, and costs resulting from the violations alleged. Am. Compl. at 7. The class proposed for certification by Plaintiffs is defined as follows:

> A nationwide class of consumers who (a) live in US Postal zip codes allegedly owned by Equifax's affiliate CSC Credit Services, but whose credit files are stored on the Equifax database; (b) have communicated a dispute pursuant to 15 U.S.C. § 1681i directly to Equifax; (c) within the past two years from the date of filing of this complaint; (d) which disputes have not been investigated by Equifax.

Id. P 31.

**B. The Named Plaintiffs**

## 1. Joan Lockhart Gardner

On May 31, 2005, Gardner purchased her credit report from Equifax. Id. P 5. On November 28, 2005, Gardner sent a dispute letter to Equifax, stating she was a victim of identity theft and disputing several [*3] inaccuracies on her credit report. Id. P 6. Equifax acknowledged receipt of Gardner's dispute letter in a reply to her, sent December 15, 2005, which further stated her correspondence was forwarded to CSC Credit Services Inc. ("CSC"), the company that researches disputes arising in the zip code in which Gardner's address is located. [1] Id. PP 8-9. The reply instructed Gardner to contact CSC directly should she have any further questions or issues regarding her credit file. Id. P 9. Equifax also sent a letter to Gardner on December 16, 2005, stating a "fraud alert" had been placed on her credit file. Id. P 10. On February 28, 2006, Gardner sent another dispute letter to Equifax, to which Gardner did not receive a reply. Id. PP 12-14.

> [1]   Equifax and CSC are consumer reporting agencies. Fluellen Decl. (Def.'s Ex. [Docket No. 38] A) PP 4, 7. CSC licenses from Equifax the computer system used to manage consumer credit files. Id. P 7. Despite using the same system, Equifax and CSC maintain independent files for consumers based on the consumers' zip codes, and one company cannot access the other company's files without permission. Id. P 15; see generally Morris v. Equifax Info. Servs., LLC, 457 F.3d 460, 466 (5th Cir. 2006) [*4] (providing extensive description of the credit reporting industry and the commercial relationship between Equifax and CSC).

## 2. Susan Bofferding

In December 1998, Bofferding leased a car and financed the lease through Wells Fargo Auto Finance. Id. P 17. In July 2003, Bofferding returned the car to the dealership and paid the lease in full. Id. P 18. The dealership was late in making payments on the vehicle lease after the car was returned, and Wells Fargo reported the car as repossessed. Id. PP 20-21.

In June 2006, Bofferding received letters denying her application for a student loan on behalf of her son. Id. P 22. One of the denial letters stated that the credit decision was based on information obtained in a credit report from Equifax-CSC Credit Services. Id. P 23. The letter explained her right as a consumer to dispute any inaccuracies contained in her credit report and to direct any communication regarding such disputes to Equifax. Id. P 24. Being apprised of her rights, Bofferding communicated an alleged inaccuracy in her credit report to Equifax in a dispute letter sent on June 30, 2006, to which Bofferding did not receive a reply. Id. PP 27-28.

## C. Equifax's Policy Upon Receipt of  [*5] a Dispute Letter

Equifax generally does not perform reinvestigation of disputes initiated by consumers located in CSC's zip codes. [2] Fluellen Decl. PP 12-15. Equifax does, in certain circumstances, reinvestigate a dispute on a CSC file, but typically only with the advance permission and at the direction of CSC. Id. PP 16-17; Poch Dep. (Def.'s Ex. B; Lyons Aff. [Docket No. 44] Ex. A) at 49. Therefore, Equifax's general policy upon receiving a dispute letter regarding a CSC-owned file is to forward the dispute to CSC. Fluellen Decl. P 19; Poch Dep. at 5.

> [2]   The file of a consumer is "owned" by a credit reporting agency if that consumer lives in a zip code that is overseen by that credit reporting agency. See Morris, 457 F.3d at 466 n.9.

## III. DISCUSSION

## A. Rule 23 of the Federal Rules of Civil Procedure

The requirements for class certification are set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). The proposed class must satisfy the four explicit requirements of Rule 23(a), including: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the [*6] claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a); Donaldson v. Pillsbury Co., 554 F.2d 825, 829 (8th Cir. 1977). Rule 23 also implicitly requires that named parties be members of the objectively ascertainable class they seek to represent. See Powell v. Nat'l Football League, 711 F. Supp. 959, 966 (D. Minn. 1989). Additionally, a plaintiff must fulfill the requirements of a Rule 23(b) category in order to obtain certification for the proposed class. Fed. R. Civ. P. 23(b); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).

The plaintiff bears the burden of proving both the threshold requirements of Rule 23(a) and fulfillment of one of the three subsections set forth in Rule 23(b). Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). When considering a motion for class certification, the court takes the substantive allegations in the plaintiff's complaint as true, as the issue is resolved, not by an investigation into the merits of the claim, but rather by consideration of the class certification criteria. [*7] Thompson v. Am. Tobacco Co., 189 F.R.D. 544, 549 (D. Minn. 1999); Lockwood Motors, Inc. v. Gen. Motors

Corp., 162 F.R.D. 569, 573 (D. Minn. 1995). Nonetheless, a motion for class certification "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) (citation omitted). Only after a rigorous analysis of the proposed class and the requirements of Rule 23 may a court grant class certification. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). Furthermore, a district court retains discretion in the decision to certify a class. See In re St. Jude Med. Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).

### B. Rule 23(a) of the Federal Rules of Civil Procedure

### 1. Implicit requirements of Rule 23(a)

In addition to the explicit requirements enumerated in Rule 23(a), an implicit requirement is that a proposed class be definable. [3] Powell, 711 F. Supp. at 966. Plaintiffs must establish that the class, as proposed, is objectively ascertainable and a precise definition of the class must be given. Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976).

> 3   An additional implicit requirement [*8] is that the named parties be members of the proposed class. See Powell, 711 F. Supp. at 966. Defendant does not appear to challenge that both Gardner and Bofferding are members of the proposed class.

Equifax challenges Plaintiffs' fulfillment of the objectively ascertainable class requirement, stating the determination of class membership requires individual inquiry and is not capable of ready identification. Def.'s Opp'n Mem. [Docket No. 36] at 13 (citing Buford v. H & R Block, Inc., 168 F.R.D. 340, 346 (S.D. Ga. 1996)). Equifax points to occasions in which it does investigate CSC-owned files, and the question of whether a class member "directly" communicated a dispute to Equifax, as examples of individual assessments that would be necessary to define the class. Id. at 14-16.

The Court finds the class, as proposed, is objectively ascertainable. Whether or not Equifax followed its general business practice in a particular instance would likely be readily determined with a cursory look at the records Equifax purportedly possesses. See Lyons Aff. Ex. E at 3-5. Also, determining if Equifax "directly" received a communication from a potential class member regarding a dispute can be considered [*9] objectively. There would be no "difficult determination . . . of who is in the class and who is not," like there was in Foster v. St. Jude Medical, Inc., 229 F.R.D. 599, 607 (D. Minn. 2005). Because the proposed class is objectively ascertainable, the Court turns to the enumerated requirements of Rule 23(a).

### 2. Explicit Requirements of Rule 23(a)

#### a. Numerosity

The first requirement of Rule 23(a) is that the potential class members be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a). Impracticability of joinder is a question to be determined by the court "based upon all the circumstances surrounding a case." Boyd v. Ozark Air Lines, Inc., 568 F.2d 50, 55 (8th Cir. 1977). Possible considerations include the nature of the action, number of class members, and the size of the potential individual claims. Sonmore v. CheckRite Recovery Servs., Inc., 206 F.R.D. 257, 261 (D. Minn. 2001). Equifax does not challenge Plaintiffs' fulfillment of this requirement and the Court finds the requirement sufficiently satisfied. The potential class members are spread across a wide geographic area based on the zip codes owned by CSC, ranging from Texas to Minnesota. Poch Dep. at 8. More important [*10] is the large number of potential class members, with an early estimate of potential class members greater than 100,000. Am. Compl. P 32. Given the sizable number and wide geographic dispersion of potential class members, the Court finds joinder to be impracticable, fulfilling the numerosity requirement.

#### b. Commonality

Rule 23(a)(2) requires common questions of law or fact to be present for class certification to be approved. Fed. R. Civ. P. 23(a)(2). This requirement is fulfilled upon a showing that "the legal question linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (citations and quotation marks omitted). This requirement is a relatively easy threshold inquiry, requiring only some common questions of law or fact amongst the class members. In re Hartford Sales Practices Litig., 192 F.R.D. 592, 603 (D. Minn. 1999).

Plaintiffs argue the potential class members all have claims stemming from Equifax's failure to reinvestigate a communicated dispute. The success of these claims, Plaintiffs argue, hinges upon the determination of the legality of what is alleged to be Equifax's common business [*11] practice. Pls.' Mem. [Docket No. 17] at 10. The Court finds the commonality requirement of Rule 23(a)(2) to be satisfied. A determination of the legality of Equifax's allegedly regular business practice is necessary to the resolution of the claims all the proposed class members could bring individually under the FCRA. This common question is the only one identified by Plaintiffs in their Amended Complaint, but is sufficient to meet the commonality requirement under standards enunciated by

the Eighth Circuit Court of Appeals. See Am. Compl. P 38; Paxton v. Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982); see also Thompson, 189 F.R.D. at 549. A proposed class may satisfy the commonality requirement but still fail under the "far more demanding" predominance requirement of Rule 23(b)(3). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Nonetheless, the Court finds that common issues of law or fact exist such that the commonality requirement of Rule 23(a)(2) is fulfilled.

#### c. Typicality

Rule 23(a) further requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is present "when the [*12] claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." In re Potash Antitrust Litig., 159 F.R.D. 682, 690 (D. Minn. 1995) (quotations omitted). So long as other class members have claims similar to the named plaintiff, typicality is fairly easily established. DeBoer, 64 F.3d at 1174.

Plaintiffs argue typicality is established because the named representatives' claims arise from the same conduct as the claims of other members of the putative class; namely, Equifax's alleged failure to reinvestigate consumer disputes. Pls.' Mem. at 12. Equifax does not challenge Plaintiffs' fulfillment of the typicality requirement. See Def.'s Opp'n Mem. at 13-24. The Court finds that Plaintiffs have fulfilled the burden of establishing the typicality requirement. The claims of the representative Plaintiffs arise from an alleged violation of the FCRA, 15 U.S.C. § 1681i, as do the claims of the potential members of the proposed class. All the claims, therefore, would necessarily involve proving a violation of a requirement imposed by § 1681i. The low bar for fulfillment of this requirement allows for the existence of some factual [*13] differences, and the Court finds the underlying legal issue in the class members' claims similar enough to satisfy the typicality requirement.

#### d. Adequacy

The fourth enumerated condition, with its focus on protecting the interests of absent class members, requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). While related to the typicality requirement, adequacy of representation is distinct and present when "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." In re GenesisIntermedia Secs. Litig., 232 F.R.D. 321, 330 (D. Minn. 2005).[4] The adequacy requirement inquiry "serves to uncover conflicts of

interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625.

> 4 Plaintiffs assert their counsel of record is adequate in light of previous experience litigating class actions as well as individual cases under the FCRA. Pls.' Mem. at 13; see Lyons, Sr. Decl. [Docket No. [*14] 18]; Lyons, Jr. Decl. [Docket No. 19]. Equifax does not challenge this assertion.

Equifax argues the named Plaintiffs' election to forego actual damages or a negligence claim renders them inadequate representatives of the class. Def.'s Opp'n Mem. at 18. Furthermore, Equifax avers that opt-out and notice procedures insufficiently protect absent class members from the loss of potential claims for actual damages. Id. at 23-24. Plaintiffs, however, contend that their failure to pursue actual damages or a negligence claim does not render them inadequate representatives and that notice and opt-out procedures allow any potential members to retain claims for actual damages if they so desire. See Pls.' Reply Mem. [Docket No. 43] at 7-11 (citing Murray v. GMAC Mortgage Corp., 434 F.3d 948, 953 (7th Cir. 2006)).

Plaintiffs rely on Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006), for the proposition that failure to pursue actual damages does not preclude a finding of adequacy. Pls.' Reply Mem. at 9. The proposed class in Murray sought statutory damages for violations of 15 U.S.C. §§ 1681b(c)(1)(B)(i) and m(d)(1)(D), resulting from a potential lender's failure to make a "firm offer of [*15] credit" upon accessing a consumer's credit file without the consumer's consent and failure to provide clear disclosure of the consumer's right to close her credit information to parties lacking prior consent. 434 F.3d at 951. In examining the propriety of seeking only statutory but not compensatory damages, the Murray court stated: "Yet individual losses, if any, are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft." Id. at 953. Murray is not binding authority on this Court. But if it were, this Court finds that in the instant case, it is not clear "[t]hat actual loss is small and hard to quantify." Id. Requiring class members to affirmatively opt-out to preserve actual damage claims is not justified based on the size and quantification issue of damages in this case.

Plaintiffs argue actual damages are unlikely to be imposed, based on a deposition of an Equifax employee. Pls.' Reply Mem. at 9 (citing Fluellen Dep. (Lyons Aff. Ex. B) at 16).[5] However, Plaintiffs offer no other argument for the claim that actual damages are unlikely to occur as a result of a 15 U.S.C. § 1681i violation. Gardner claims to have [*16] suffered actual damages and

both representatives will relinquish their respective claims for actual damages in favor of the class action, despite it being a potential disadvantage to themselves. Gardner Dep. (Def.'s Ex. C) at 33, 37; Bofferding Dep. (Def.'s Ex. D) at 65. If the named representatives are truly representative of the class, as Plaintiffs assert, then absent class members would suffer this same disadvantage and lose claims for actual damages should they fail to opt-out of the class action.

> 5  In her deposition, Fluellen states: "[b]ut I personally view that there is no violation; and my personal view is that there wouldn't be any damages." Fleullen Dep. at 16.

The Court finds the Plaintiffs to be inadequate representatives. In order to ensure the cohesion necessary to avoid conflict within the class, the Plaintiffs seek to place a burden on members of the potential class to opt-out if they wish to retain their legal claim for actual damages. This places a burden on too many absent class members who may have a significant actual damage claim and the Court is unwilling to effectively bar absent class members' future legal claims because of the failure of those parties to opt-out. [*17] See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 805, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) (discussing the effects of res judicata). While the Court acknowledges the existence of the opt-out mechanism as a viable method to avoid *some* conflict within a class, opt-out is not a sufficient cure for the inadequacy of representation in this case. See Clark v. Experian Info. Solutions, Inc., 2001 U.S. Dist. LEXIS 20024, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001) (denying class certification motion on adequacy grounds because of named Plaintiffs' failure to pursue actual damages); Thompson, 189 F.R.D. at 551 ("This possible prejudice to class members is simply too great for the Court to conclude that the named Plaintiffs' interests are aligned with those of the class.").

The Plaintiffs rely on the decision in Egge v. Healthspan Services Co., 208 F.R.D. 265 (D. Minn. 2002), in arguing that adequacy of representation is fulfilled. See Pls.' Reply Mem. at 7-10. In Egge, a class sought certification for claims resulting from a violation of the Fair Debt Collection Practices Act. 208 F.R.D. at 266. Both statutory and actual damages were sought by the class. Id. at 271. An adequacy issue in Egge was whether a named party that had not suffered actual [*18] damages could provide adequate representation of a class seeking to recover actual damages. Id. at 269. In Egge, there was no concern of absent class members losing future claims for actual damages, which is the concern regarding the adequacy of the named parties in the instant case. The Court in Egge states: "The possibility that putative class members would be entitled to greater recovery should

they pursue claims on their own arises in every class action, but it is not grounds for denying class certification, if the other criteria are met." Id. at 272. In the instant case, the other criteria for class certification are not all met, further distinguishing this case from the Egge case on which Plaintiffs rely. The opt-out mechanism is not meant to ensure lack of conflict within the class by forcing a large number of individuals to affirmatively retain their legal rights or lose their claims. If this were the case, any person would be an adequate representative of a proposed class so long as there was an opt-out procedure, and there would be no need for an adequacy requirement.

## C. Rule 23(b) of the Federal Rules of Civil Procedure

Plaintiffs seek to have the proposed class certified [*19] under Rule 23(b)(3), which requires common questions of law or fact to predominate over individual questions as well as a determination that the class action mechanism is superior to any alternative form of litigation for the same claims. Fed. R. Civ. P. 23(b)(3).

## 1. Superiority

Rule 23(b)(3) requires class certification to be ordered only in the event of a finding that the class action mechanism is superior to alternative forms of litigation. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) offers the following factors for courts to consider in the superiority analysis:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs contend the interest of class members in controlling individual litigation is lacking, stating that "the expense and burden of individual litigation make it difficult, if not impossible, for [*20] members of the class to redress the wrongs done to them individually," Pls.' Mem. at 21, and "[a]bsent a class action it is unlikely that most putative class members would bring individual suits against the Defendant." Pls.' Reply Mem. at 21. However, the costs and attorney's fees provisions of the FCRA provide sufficient incentive for bringing individual claims. See 15 U.S.C. § 1681n(a)(3). The at-

torney's fees provision, allowing harmed individuals to pursue meritorious claims without incurring financial detriment, weighs against a finding of class action superiority over other litigation mechanisms. See Jones v. CBE Group, Inc., 215 F.R.D. 558, 570 (D. Minn. 2003) (finding no lack of incentive for individuals to pursue actions under the Fair Debt Collection Practices Act, which "provides for actual damages, statutory damages of $ 1,000 plus costs and attorney's fees") (citing 15 U.S.C. § 1692k); cf. Alberts v. Nash Finch Co., Civ. No. 05-0887 PJS/JJG, 245 F.R.D. 399, 2007 U.S. Dist. LEXIS 10954, 2007 WL 628388, at *9 (D. Minn. Feb. 15, 2007) (distinguishing mandatory from permissive fee-shifting provisions in finding superiority of class action mechanism despite presence of permissive fee-shifting provision).

The Court also [*21] has manageability concerns regarding the class action as proposed by Plaintiffs because of the individual nature of the issues involved in this case. Issues such as the reasonableness of Equifax's conduct along with a determination of the willfulness of the violation are of such an individual nature that maintenance of a class action would become unwieldy. See Fed. R. Civ. P. 23(b)(3)(D).

The Motion for Class Certification fails primarily because the class action mechanism is not a superior method of resolving the claims at issue. Nonetheless, in the interest of completeness, a discussion of the predominance requirement will be undertaken as well.

## 2. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. In examining this requirement, the Court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) [*22] (internal citation omitted). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." Id.

Plaintiffs assert "[t]he legal question of whether Defendant's act of failing to investigate consumer disputes violates the FCRA is common to all class members, and there will be no individualized legal questions." Pls.' Mem. at 16. Plaintiffs also argue the factual evidence necessary for resolution of the class action is common to all members of the class and declare that individual determinations of fact are "unnecessary" for the resolution of the action. Id.

Establishing Equifax's liability for a violation of 15 U.S.C. § 1681i is an inappropriate question for resolution on a class-wide basis due to the individual nature of the reasonableness and willfulness standards. Undoubtedly, an issue common to all members of the proposed class is whether Equifax violated the FCRA by forwarding disputes emanating from CSC-owned zip codes to CSC rather than reinvestigating the disputes itself. However, the issue cannot be resolved on class-wide basis without substantial individual inquiry.

Plaintiffs allege Equifax violated § 1681i, which [*23] requires a consumer reporting agency, upon receipt of notice from a consumer, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). In order to recover the statutory damages sought, Plaintiffs would have to prove Equifax acted "willfully" in violating the reasonable reinvestigation requirement of § 1681i. See 15 U.S.C. § 1681n(a); Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2206, 167 L. Ed. 2d 1045 (2007). The Eighth Circuit has stated: "To show willful noncompliance with the FCRA, the plaintiff must show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998) (quoting Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997) (citations omitted)). Furthermore, the Supreme Court has recently interpreted "willfully" in 15 U.S.C. § 1681n(a) to include violations resulting from a reckless disregard of a statutory duty imposed by the FCRA. Safeco, 127 S. Ct. at 2216.

Determination on the reasonableness or willfulness of Equifax's actions requires examination of each particular dispute letter, Equifax's response, [*24] and subsequent communication and actions taken in response to that individual dispute. The forwarding of a consumer dispute to another consumer reporting agency may be considered reasonable in some instances and not in others, depending upon the nature of the communicated dispute and the type of inquiry necessary to sufficiently investigate that dispute. Also, an inquiry into the willfulness of Equifax's behavior "examines the totality of the circumstances involved in a consumer's interaction with a credit reporting agency." Barnett v. Experian Info. Solutions, No. Civ. A. 2:00CV175, 2004 U.S. Dist. LEXIS 28855, 2004 WL 4032909, at *5 (E.D. Tex. Sept. 30, 2004). Accordingly, any willfulness investigation will inherently involve individualized issues. A totality of the circumstances inquiry necessary to determine the reasonableness and willfulness of Equifax's behavior cannot occur on a class-wide basis.

Plaintiffs argue the possibility of subclasses remedies the problem of individualized issues. Pls.' Reply Mem. at 20. The creation of subclasses is an inappropri-

ate remedy for this problem. See Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 98 (W.D. Mo. 1997). In order to properly place the class members [*25] into subclasses, an in-depth inquiry into the dispute letters and what they communicated, in addition to Equifax's response, would have to be undertaken. Such an in-depth inquiry to properly develop subclasses removes one of the benefits of the class action mechanism in the first place, which is the avoidance of individual inquiry.

The issues demanding individualized inquiry predominate over common legal and factual issues in this case. Although a class-wide common question exists, the issues of liability and damages are questions that are individual in nature and therefore, not suitable for resolution as a class action. Therefore, the Motion for Class Certification fails on these additional grounds. [6]

> [6] After oral argument was heard on this matter, Plaintiffs submitted a letter [Docket No. 49] calling attention to the recent decision of Jancik v. Cavalry Portfolio Servs., LLC, Civ. No. 06-3104 MJD/AJB, 2007 U.S. Dist. LEXIS 49500, 2007 WL 1994026 (D. Minn. July 3, 2007). The Jancik case, however, is not particularly instructive given its factual and legal differences. The plaintiff in Jancik sought both statutory and actual damages for violations of the Fair Debt Collection Practices Act on behalf of 9,697 putative [*26] class members. Jancik, 2007 U.S. Dist. LEXIS 49500, 2007 WL 1994026 at *1. The Court also finds that in the instant case, the attorney's fees provision provides sufficient incentive for individual plaintiffs to bring suit, should they feel aggrieved by a violation of the FCRA.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification [Docket No. 15] is **DENIED.**

BY THE COURT:

s/ Ann D. Montgomery

U.S. DISTRICT JUDGE

Dated: August 6, 2007.

LEXSEE



Positive
As of: Sep 05, 2008

**KARL L. HALPERIN, individually and on behalf of a class, Plaintiff, v. INTER-PARK INC., and DOES 1-10, Defendants.**

**No. 07 C 2161**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2007 U.S. Dist. LEXIS 87851**

**November 29, 2007, Decided**
**November 29, 2007, Filed**

**CORE TERMS:** card, class action, class members, digits, class representative, class certification, expiration date, proposed class, questions of law, citations omitted, actual damages, commonality, numerosity, printed, adequately protect, statutory damages, electronically, predominate, typicality, overbroad, adequacy, credit card, common nucleus of operative fact, risk of injury, potential claims, disproportionality, impracticable, prerequisites, antagonistic, predominance

**COUNSEL:** [*1] For Karl L. Halperin, individually and on behalf of a class, Plaintiff: Daniel A. Edelman, LEAD ATTORNEY, Cathleen M. Combs, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Interpark, Inc., Defendant: James L. Thompson, Michael F. Otto, Traci M. Braun, Jenner & Block LLP, Chicago, IL.

For Does 1-10, Defendant:Christopher Michael O'Connor, James L. Thompson, Jenner & Block LLP, Chicago, IL.

**JUDGES:** Elaine E. Bucklo, United States District Judge.

**OPINION BY:** Elaine E. Bucklo

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Karl L. Halperin has brought a class action complaint against defendants Interpark Inc. ("Interpark") and Does 1-10 alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681c(g) ("FCRA"). Halperin has now moved to certify a class defined as

> all persons to whom Interpark . . . provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit [*2] card.

Defendant Interpark opposes class certification on the grounds that a class action will not result in the fair and efficient adjudication of the controversy and plaintiff is not an appropriate class representative. For the following reasons, plaintiff's motion is granted.

I.

On April 11, 2007 Halperin was issued an electronic receipt from an automated payment machine at an Inter-Park garage in Chicago, Illinois. The receipt contained the last four digits of his card number and the card's expiration date. Section 1681c(g) prohibits merchants from

giving customers electronically printed receipts which display "more than the last 5 digits of the card number or expiration date."

II.

In assessing Halperin's motion for class certification, I must determine whether the four prerequisites of Federal Rule of Civil Procedure 23(a) are met, and whether plaintiff can maintain his suit under Rule 23(b)(1), (2), or (3). The four prerequisites of Rule 23(a) are that (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of the claims of the class; and (4)  [*3] the representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). Plaintiff's motion for class certification proceeds under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). I address each of these requirements below.

A. Numerosity

In order to satisfy Rule 23's numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, defendant does not contest that Halperin's proposed class would have, by defendant's estimate, at least 200 members and that over 900,000 qualifying receipts may have been printed. This estimate satisfies the numerosity requirement. See, e.g., McCabe v. Crawford & Co., 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1).") (citations omitted). I find this requirement met.

B. Commonality

The  [*4] second requirement of Rule 23(a) is that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is satisfied by showing "a common nucleus of operative fact." Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) (citation omitted). In this case, the common nucleus of operative fact would be receiving the faulty receipts from defendant. Defendants do not dispute that plaintiff's proposed class satisfies the commonality requirement.

C. Typicality

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typi-

cal of the claims or defenses of the class." FED. R. CIV. P. 23(3). "'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" De La Fuente v. Stokely-Van Camp Inc., 713 F.2d 225, 232 (7th Cir. 1983) (quoting Herbert Newberg, NEWBERG ON CLASS ACTIONS § 1115(b) (1977)). Again, defendant has presented no arguments why Halperin's claim is not typical of those of the class. Plaintiff's claims are the same as those of other class members;  [*5] he alleges that defendant improperly printed the expiration date of his card on his receipt. Therefore, I find that Halperin's claims meet the typicality requirement.

D. Adequacy of Representation

The final requirement of Rule 23(a) is that the class representative must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is not met if the class representative has interests that are antagonistic to or in conflict with those of class members. See Uhl v. Thoroughbred Tech. and Telecomms., Inc., 309 F.3d 978, 985 (7th Cir. 2002) (citations omitted). Defendant argues that Halperin is not an appropriate class representative because he seeks to represent a class that potentially includes members who suffered a greater risk of injury as identified in FACTA. Specifically, defendant contends the class is overbroad because plaintiff's receipt from Interpark contained the last four digits of his card number, not five as set forth in subsection (a) of the class definition, and the expiration date. Although I explore this issue further with respect to the class definition, I do not find this renders plaintiff an inadequate class representative  [*6] because Halperin's interest runs parallel to the members of class who received receipts with five card digits, as opposed to just four, but whose receipts nonetheless may have violated FACTA. Moreover, Halperin's complaint does not seek recovery for actual damages in terms of the "risk of injury." As the Seventh Circuit held in Murray v. GMAC Mortgage Corp., actual damages in FCRA cases are likely to be small, and class treatment would be impossible if class counsel were required to seek actual damages for each individual class member. 434 F.3d 948, 953 (7th Cir. 2006). The Seventh Circuit stated in Murray that "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." Id. Further, should any class members have individual claims for actual damages that they wish to pursue, they may opt out of the class to do so. Id. Therefore, Halperin's interests are not antagonistic to or in conflict with those of class members.

Defendant also cites to portions of Halperin's deposition for the proposition that Halperin has admitted that [*7] defendant did not act "wilfully" under the FACTA. The deposition testimony does not support this contention, for Halperin states defendant acted wilfully because he believed it to be aware of pertinent statutory framework and that it chose to disregard it. Although he admitted he did not have specific evidence to this effect, that is not his responsibility but his lawyers. Moreover, plaintiff need not understand every aspect of the theories upon which the complaint is based; this is the responsibility of class counsel. *See, e.g., Hernandez v. Midland Credit Mgmt., Inc., 236 F.R.D. 406, 414 (N.D. Ill. 2006).* Further, defendant argues that Halperin cannot represent the class because of his attorney's mistake in electronically filing an unredacted version of their briefs which contained his card information. I do not see why this makes Halperin inadequate as he is not the person responsible for e-filing the briefs.

Defendants also imply that Edelman is not appropriate class counsel. *See Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993)* (holding that the adequacy of class counsel is part of a Rule 23(a)(4) determination). Under Rule 23(g), in appointing class [*8] counsel I must consider the work counsel has done in identifying or investigating potential claims, counsel's experience in handling class actions and the type of claim asserted in the action, and the resources counsel will commit to representing the class. *See* FED. R. CIV. P. 23(g).

Defendants imply that Edelman is not an appropriate class counsel because of the unredacted filing. Defendant does not take issue with class counsel's investigation, experience or resources related to representing the class. Analyzing the factors in Rule 23(g), I find Edelman is appropriate class counsel. Edelman has clearly worked to identify potential claims through discovery and to articulate those claims in its class certification briefings; Edelman has significant experience in litigating class actions, particularly under the FCRA; and Edelman and his firm clearly have the resources to represent the class as they have in the numerous other class actions in which have been involved. The single mishap concerning the electronic filing does not fatally undermine Eleman's qualifications.

For these reasons, I find that Halperin and Edelman adequately protect the interests of the class.

## E. Predominance

Federal Rule of Civil Procedure 23(b)(3) [*9] requires a plaintiff to demonstrate that questions of law or fact common to all members of the class predominate over any individual questions. For the reasons discussed above with respect to commonality and typicality, there is no reason to believe that any individual questions will predominate over the common questions in this litigation. Defendant presents no argument to the contrary. I find that the predominance requirement of Rule 23(b)(3) is met in this case.

## F. Superiority

Federal Rule of Civil Procedure 23(b)(3) also requires that a class action be the superior method of adjudicating the claims at issue. As the Seventh Circuit noted in *Murray,* FCRA claims such as Halperin's are well-suited to class treatment. 434 F.3d at 953. Allowing the present class to proceed would be an efficient use of judicial resources, and would be superior to individual adjudication of the class members' claims.

Defendant's argument that the statutory damages sought would be disproportionally high is not properly grounded in Seventh Circuit law. In fact, in *Murray,* the Seventh Circuit held as follows:

> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in [*10] the legislative decision to authorize awards . . . . The district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves. [citations omitted] Maybe suits such as this will lead Congress to amend the [FCRA]; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted. . . . Reducing recoveries by forcing everyone to litigate independently - so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims - has little to recommend it.

434 F.3d at 953-54. As in the facts of this case, the complaint in *Murray* sought statutory damages, which in the aggregate created a potential liability "in the billions of dollars for purely technical violation of the FCRA." *Id. at 953.* Specifically with respect to the disproportionality of an award, *Murray* provides "[a]n awared that would be unconstitutionally excessive may be reduced . . . but constitutional limits are best applied after a class has been certified." *Id. at 954* (citing *State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)).* [*11] Contrary to defendant's argu-

ment, I find *Murray* speaks directly to the issue of disproportionality in the FCRA context.

Accordingly, I find *Murray* controlling and Rule 23(b)(3)'s superiority requirement is met here.

G. Class Definition

Although defendant does not raise this argument separately, it did raise the issue that the class may be overbroad because Halperin seeks to represent a class that received receipts with more than five digits of the credit card (as opposed to four) in addition to the expiration date. I do not find the proposed class is insufficiently defined, for purposes of notice, or that plaintiff does not fall within the class definition. *See Sandoval v. City of Chicago,* No. 07 C 2835, 2007 U.S. Dist. LEXIS 77829, 2007 WL 3087136, at *2 ( (N.D. Ill. Oct. 18, 2007)

(Conlon, J.). Nor is the class overbroad by improperly attempting to include individuals without standing under FACTA. *See id.* Accordingly, the class definition not improper.

III.

For the foregoing reasons, I grant plaintiff's motion and certify plaintiff's proposed class.

/s/ Elaine E. Bucklo

**Elaine E. Bucklo**

United States District Judge

DATED: November 29, 2007

LEXSEE

**WILLIAM HARRIS, individually and on behalf of all others similarly situated, Plaintiff, v. BEST BUY CO., INC. and BESTBUY.COM, LLC, Defendants.**

No. 07 C 2559

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2008 U.S. Dist. LEXIS 22166**

**March 20, 2008, Decided
March 20, 2008, Filed**

**CORE TERMS:** class member, printed, proposed class, print, card, class action, debit, credit card, online, class certification, electronically, numerosity, website, expiration date, confirmation, commonality, adequacy, fulfilled, consumer, digits, questions of law, predominate, typicality, customer, display, lawsuit, computer screen, questions of fact, statutory damages, actual damages

**COUNSEL:** [*1] For William Harris, individually and on behalf of all others similarly situated, Plaintiff: Keith James Keogh, LEAD ATTORNEY, Law Offices of Keith J. Keogh, Chicago, IL; Alexander Holmes Burke, Law Offices of Keith J. Keogh, Ltd., Chicago, IL.

For Best Buy Co. Inc., Bestbuy.com LLC, Defendants: Emily J Prentice, LEAD ATTORNEY, Katten Muchin Rosenman LLP, Chicago, IL; Anne M. Lockner, Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN; Edward William Gleason, Richard James Lofgren, Thomas Bernard Keegan, Keegan, Laterza, Lofgren & Gleason, P.C., Chicago, IL.

**JUDGES:** AMY J. ST. EVE, United States District Judge.

**OPINION BY:** AMY J. ST. EVE

**OPINION**

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff William Harris, individually and on behalf of all others similarly situated, brings the present one-count class action Amended Complaint alleging that Best Buy Co. Inc. and Bestbuy.com, LLC (collectively "Best Buy") violated the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 et seq. Before the Court is Harris' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the Court, [*2] in its discretion, grants Harris' motion.

**BACKGROUND**

In his Amended Complaint, Harris alleges that Best Buy willfully violated Section 1681c(g) of FACTA, and thus failed to protect Harris and others against identity theft and credit card and debit card fraud by printing more than the last five digits of the card number and/or the expiration date on receipts provided to debit card and credit card cardholders transacting business with Best Buy. (R. 54-1, Amend. Compl. P 4.) Harris brings his claim under 15 U.S.C. § 1681c(g), which provides:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g)(1). Harris further alleges that Best Buy was aware of FACTA's truncation requirement that started on December 4, 2006, yet when he made a purchase from Best Buy's website on May 15, 2007, a computer generated receipt displayed his credit card's expiration date. (*Id.* PP 12, 13.)

Harris brings this action on behalf of a class. (*Id.* P 14.) In the Amended Complaint, Harris defines the proposed [*3] class as follows:

> The class is defined as all persons in Illinois to whom Best Buy provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person['s] credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

(*Id.* P 15.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006)* (class must satisfy requirements of numerosity, commonality, typicality, and adequacy of representation). Failure to meet any of these Rule 23(a) requirements precludes class certification. *Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993)*.

In [*4] addition to satisfying the requirements under Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the requirements set forth in Rule 23(b). *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)*; *Oshana, 472 F.3d at 513*. In this case, Harris requests certification of the proposed class pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods., 521 U.S. at 615*. As the Seventh Circuit instructs, "Rule 23(b)(3) was designed for situations ... in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp., 434 F.3d 948, 953 (7th Cir. 2006)*. Under Rule 23(b)(3), members of a certified class may opt out and pursue their claims individu-

ally. *Id.; In re Allstate Ins. Co., 400 F.3d 505, 508 (7th Cir. 2005)*.

The party seeking class certification [*5] bears the burden of establishing that certification is proper. *See Oshana, 472 F.3d at 513; Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993)*. In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true. *See Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 675 (7th Cir. 2001)*. Rather, in deciding whether to certify a class, the court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id. at 676*. Finally, district courts have broad discretion in determining motions for class certification. *See Reiter v. Sonotone Corp., 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979)* (Rule 23 vests district courts with broad power and discretion); *Payton v. County of Carroll, 473 F.3d 845, 847 (7th Cir. 2007)* (appellate review of district court's class certification is for abuse of discretion).

## ANALYSIS

### I. Federal Rule of Civil Procedure 23(a)

#### A. Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), Harris must show that the number of members in the proposed class is so large that joinder would be impracticable. *See Pruitt v. City of Chicago, Ill., 472 F.3d 925, 926 (7th Cir. 2006)*. [*6] In his Amended Complaint, Harris alleges that there are over 100 persons in Illinois to whom Best Buy provided an electronically printed receipt at the point of sale or transaction occurring after December 4, 2006. (Am. Compl. P 17.) Harris also sets forth evidence that Best Buy estimated that between December 4, 2006 and May 22, 2007, approximately 195,450 individuals in Illinois made purchases on Best Buy's website. (R. 41-2, Ex. 6, at 9.) Although there is no bright-line test for numerosity, a class of at least forty members is generally sufficient to satisfy the numerosity requirement. *See Pruitt, 472 F.3d at 926; Cavin v. Home Loan Ctr., Inc., 236 F.R.D. 387, 392 (N.D. Ill. 2006)*.

Here, Best Buy argues that Harris cannot meet the numerosity requirement because the class definition depends on an unascertainable fact - whether each class member printed the confirmation page of his or her online transaction from Best Buy's website. Specifically, when customers purchase an item on Best Buy's website, before the order is submitted, a screen entitled "Review & Submit Your Order" appears. (R. 53-1, Ex. 3, P 2.) If the customer concludes that the "Review & Submit Your Order" screen is [*7] correct, she can then click on the

"Submit Your Order" button. (*Id.* P 2.) Thereafter, a screen appears stating "Thank You for Your Order," which is the confirmation page that supplies a summary of the order including credit card information. (*Id.* P 4.) An online customer may print this confirmation page or print her receipt under the "Order Status" section at Bestbuy.com. (*Id.* P 6.)

Based on the premise that an online customer must print her receipt to have a cognizable claim under Section 1681c(g), Best Buy argues that the number of class members is unascertainable. First, Best Buy's argument presumes that the class definition only includes online purchasers and not customers who visited Best Buy's "brick and mortar" stores. *See Harris v. Circuit City Stores, Inc.*, No. 07 C 2512, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862, at *4 (N.D. Ill. Feb. 8, 2008) ("Consumers who received receipts from brick and mortar stores are a distinct group from those who received receipts online."). Harris does not dispute Best Buy's argument, and thus the Court limits the class definition to individuals who made online purchases. The new class definition reads as follows:

> The class is defined as all persons in Illinois to whom Best [*8] Buy provided an electronically printed receipt at the point of sale or transaction, in an *online* transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card. Excluded from this class definition are Defendants and those affiliated with them, as well as the judicial officers presiding over this case and their immediate families. [1]

(emphasis added). *See Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 395 (N.D. Ill. 2006) (district court has discretion to modify proposed class definition).

---

[1] Where the class definition may encompass a large number of plaintiffs, it is prudent for the district court to exclude itself and defendants from the class definition to avoid any conflicts of interest. *See, e.g., Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 77 n.13 (E.D.N.Y. 2007); *Hillis v. Equifax Consumer Servs.*, 237 F.R.D. 491, 496 n.5 (N.D. Ga. 2006); *Zehel-Miller v. AstraZenaca Pharms., LP*, 223 F.R.D. 659, 661 n.1 (M.D. Fla. 2004); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 664 n.2 (D. Kan. 2004).

Next, [*9] Best Buy argues that the class cannot be ascertained because each class member was required to print a receipt from its website to have a cognizable claim under Section 1681c(g). Put differently, Best Buy argues that the term "electronically printed" in Section 1681c(g)(2) means that the receipt must have been printed as a hard copy - and because it would be difficult to ascertain who printed their confirmation page - Harris cannot fulfill the numerosity requirement. Harris, on the other hand, asserts that under FACTA, information merely placed on a computer screen - and not printed on paper - amounts to an "electronically printed" receipt under Section 1681c(g)(2).

Section 1681c(g)(2) states:

> This subsection shall apply only to receipts that are *electronically printed*, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(emphasis added). Because FACTA does not define the term "electronically printed," the Court turns to the meaning of "print" by looking at the plain language of the statute. Where the statute's language is plain, "the sole function of the courts is to [*10] enforce it according to its terms." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (citation omitted). In interpreting statutes, courts give words their plain and ordinary meaning "unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *Gillespie v. Equifax Info. Servs., L.L.C.* 484 F.3d 938, 941 (7th Cir. 2007) (citations omitted). Also, courts "must construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme." *Id.* (citations and quotations omitted). Courts often look to dictionaries to determine the plain meaning of words. *Id.*

The Court turns to how the term "print" was defined at the time Congress enacted FACTA in 2003. *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) ("we look at how a phrase was defined at the time the statute was drafted and enacted"); *see also Chicago Lawyers' Committee for Civil Rights v. Craigslist, Inc.*, 461 F.Supp.2d 681, 699 n.18 (N.D. Ill. 2006). [*11] [2] The Merriam-Webster Collegiate Dictionary, Eleventh Edition - that

was published in 2003 - defines the verb "print" as follows:

    1 a: to impress something in or on

        b: to stamp (as a mark) in or on something

    2 a: to make a copy of by impressing paper against an inked printing surface

        b:

            (1): to impress (as wallpaper) with a design or pattern

            (2): to impress (a pattern or design) on something

        c: to publish in print

        d: print out; also: *to display on a surface (as a computer screen) for viewing*

    3: to write in letters shaped like those of ordinary roman text type

    4: to make (a positive picture) on a sensitized photographic surface from a negative or a positive.

*Merriam-Webster Collegiate Dictionary* (11th ed. 2003) (emphasis added). As such, the plain and ordinary meaning of "electronically printed" under *Section 1681c(g)(2)* includes "to display on a surface (as a computer screen) for viewing." *See Gillespie, 484 F.3d at 941.*

    2  In *Craigslist,* this Court relied upon Webster's Third New International Dictionary (1981) for the definition of "print" as stated in the Federal Housing Act, *42 U.S.C. 3604(c),* which was enacted prior to 1981. The Court clearly stated that it was construing the word print "as [*12] defined when Congress enacted the FHA." *Id.* at 699 n.18. Thus, Best Buy's reliance on the definition of "print" in *Craigslist* is misplaced.

    Including computer screen displays as printed receipts under *Section 1681c(g)* is also supported by Congress' purpose behind enacting FACTA. Specifically, the preamble to FACTA describes that the legislation was enacted "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."

Pub.L. No. 108-159, 117 Stat. 1952. Indeed, as a district court in the Southern District of Florida recently reasoned:

    Defendant's argument that Congress aimed to reduce the likelihood of sensitive personal information falling into the wrong hands by mandating truncated information on in-store paper receipts while failing to mandate the same truncation requirements on electronic receipts transmitted over vulnerable digital communication lines is unreasonable.

*Grabein v. 1-800-Flowers.com, Inc., No. 07 CIV 22235, 2008 U.S. Dist. LEXIS 11757, 2008 WL 343179, at *3 (S.D. Fla. Jan. 29, 2008).* The Court agrees. Therefore, Best Buy's argument that Harris cannot [*13] fulfill the numerosity requirement under *Rule 23(a)(1)* fails because each class member is not required to print a hard copy of their receipt to have a cognizable claim under *Section 1681c(g).* Moreover, Harris has fulfilled the numerosity requirement based on Best Buy's estimate that approximately 195,450 individuals in Illinois made purchases on Best Buy's website from December 4, 2006 to May 22, 2007.

**B. Commonality**

    *Rule 23(a)(2)* requires that Harris prove the existence of questions of fact or law common to the proposed class. *See Culver v. City of Milwaukee, 277 F.3d 908, 910 (7th Cir. 2002)* (class must be reasonably homogeneous); *see also Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998).* "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of *Rule 23(a)(2)." Keele, 149 F.3d at 594.* A common nucleus of fact is manifest where a defendant has "engaged in standardized conduct towards members of the proposed class." *Id.*

    Best Buy argues that Harris cannot meet the commonality requirement because whether a confirmation page was printed would vary among each class member. Because the Court has rejected Best Buy's argument that class members were required [*14] to print their receipt from its website based on the plain meaning of the statute, Best Buy's argument concerning commonality fails. Meanwhile, Harris' claim under *Section 1681c(g)* is based on Best Buy's standardized conduct - that Best Buy's online receipts displayed either more than the last five digits of the person's credit card or debit card number, and/or the expiration date of the person's credit or debit card. Thus, Best Buy's conduct is the same with respect to all proposed class members. *See Keele, 149*

F.3d at 594 (common nucleus of fact requirement fulfilled if defendant "engaged in standardized conduct towards members of the proposed class."). Harris has fulfilled the commonality requirement under Rule 23(a)(2).

## C. Typicality

Under Rule 23(a)(3), "the typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police*, 7 F.3d at 596-97; *see also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) ("plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise [*15] to the claims of other class members and his or her claims are based on the same legal theory."). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Again, Best Buy argues that because Harris cannot prove that all class members printed a receipt for their online purchases, the typicality requirement cannot be met. The Court rejects any such argument as stated above. Furthermore, Harris' interests are aligned with those in the proposed class by virtue of the class definition, namely, that Best Buy subjected each class member to the same practice as Harris. *See Stokely-Van Camp*, 713 F.2d at 232 (plaintiff's claim typical if it arises from same practice or course of conduct giving rise to other class members' claims). In short, in pursuing his own claims, Harris will advance the interests of the proposed class. Harris has thus fulfilled the [*16] typicality requirement under Rule 23(a)(3).

## D. Adequacy

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *see also Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 737 (7th Cir. 2007) ("Minimum standards of adequacy are the domain of Fed.R.Civ.P. 23(a)(4), which permits a class action only if 'the representative parties will fairly and adequately protect the interests of the class.'"). To establish the adequacy requirement, class representatives must show that (1) their claims are not antagonistic to or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) experienced, competent counsel represents them. *See*

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Here, Best Buy maintains that because Harris is bringing his claim on the basis of wilfulness under 15 U.S.C. § 1681n, he is abandoning individuals who have claims based on negligence. In other words, Best Buy contends that Harris is not an adequate representative because he is not seeking actual damages on behalf of the individual class members, but only statutory [*17] damages as provided in Section 1681n. As such, Best Buy argues that Harris' claims are antagonistic and in conflict with proposed class members who have actual damages.

The Seventh Circuit rejected this argument over two years ago in *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), in which the Seventh Circuit reasoned that actual damages in FCRA cases are usually small, class treatment would be impracticable if counsel were to seek actual damages for every class member. *Id.* ("Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment."); *see also Hernandez v. Chase Bank, USA*, 243 F.R.D. 285, 289 (N.D. Ill. 2006). More specifically, the Seventh Circuit held that "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Murray*, 434 F.3d at 953. The *Murray* court further instructed that if a few class members' injuries are substantial, those class members [*18] may opt out and litigate their claims independently. *Id.*

Accordingly, Best Buy's argument that Harris does not fulfill the adequacy requirement because he is only seeking statutory damages fails based on controlling Seventh Circuit precedent. Moreover, Harris has fulfilled the adequacy requirement under Rule 23(a)(4) because his claim is not antagonistic to the proposed class' claims, he has an interest in the outcome of the case, and his counsel is experienced and competent. *See Rosario*, 963 F.2d at 1018. In short, there are no inconsistencies between Harris' claim and the class members' claims. *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

Because Harris has fulfilled the four prerequisites under Rule 23(a), the Court turns to whether he has established the predominance and superiority requirements under Rule 23(b)(3).

## II. Federal Rule of Civil Procedure 23(b)(3)

Under Rule 23(b)(3), the Court must determine whether (1) the questions of fact or law common to the

class members predominate over questions affecting only the individual class members, and (2) a class action is superior to other available methods of adjudicating plaintiffs' claims. *See* [*19] *Amchem Prods., 521 U.S. at 615; In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1019 (7th Cir. 2002).*

## A. Predominance

Under *Rule 23(b)(3)*, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." *Fed.R.Civ.P. 23(b)(3).* In other words, the "*Rule 23(b)(3)* predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem, 521 U.S. at 623* (predominance requirement more demanding than the commonality requirement under *Rule 23(a)(2)*). Thus, when there is no factual link supporting each class member's claim, class treatment is inappropriate. *See Pastor v. State Farm Mut. Auto. Ins. Co., 487 F.3d 1042, 1047 (7th Cir. 2007)* ("when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment."). Likewise, class action lawsuits based on state law claims - such as mass tort lawsuits - are not well-suited for class treatment. *In re Bridgestone/Firestone, 288 F.3d at 1020* (class action inappropriate unless litigants are governed by same legal rules).

Here, the [*20] class plaintiffs have a common question of law - whether Best Buy provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, that displayed either more than the last five digits of the class member's credit card or debit card number, and/or the expiration date of the class member's credit or debit card in violation of *Section 1681c(g).* Because there are no other legal questions at issue, whether Best Buy violated *Section 1681c(g)* predominates this lawsuit. In addition, there are no questions of fact peculiar to certain class members or uncommon questions that would detract from the cohesiveness of the proposed class' claims. *See Amchem Prods., 521 U.S. at 624.* Therefore, individual questions of law and fact will not predominate over the common questions of this litigation.

Best Buy nonetheless argues that there are individualized questions of fact, namely, whether each class member printed a receipt from its website. Because the Court rejects Best Buy's argument that each class member was required to make a hard copy of the confirmation page on Best Buy's website in order to bring a *Section 1681c(g)* claim, Best [*21] Buy's argument is unavailing.

## B. Superiority

Finally, the Court must determine whether a class action is superior to other available methods for the adjudication of the proposed class' claims. *See Szabo, 249 F.3d at 676.* A class does not satisfy the superiority requirement if its claims are not governed by the same legal rules. *See In re Bridgestone/Firestone, 288 F.3d at 1015.* Here, there is no dispute that the proposed class' claims are uniform and governed by the same law, namely, the 2003 FACTA amendment to the FCRA. *See 15 U.S.C. § 1681c(g).* More importantly, the Seventh Circuit teaches that class treatment for actions involving thousands of consumer class members with the exact same claim are superior to individual actions:

> *Rule 23(b)(3)* was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect of financial awards.

*Murray, 434 F.3d at 953* (internal citations omitted); *see also Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004)* [*22] ("It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $ 15 to $ 30."). The Court's conclusion that a class action is superior to individual lawsuits under the circumstances is also supported by "the policy at the very core of the class action mechanism[,]" which "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997).*

Nonetheless, Best Buy argues that the statutory damages award would be so grossly disproportionate to the harm suffered by the proposed class members that it would violate due process principles. *See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S.Ct. 1513 (2003), 155 L.Ed.2d 585 (2003)* ("The *Due Process Clause of the Fourteenth Amendment* prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."). The Seventh Circuit instructs, however, that whether an award is unconstitutionally excessive is best decided after the class is certified, so that the Court can evaluate the defendant's conduct and whether [*23] the defendant made an attempt to control its exposure. *See Murray, 434 F.3d at 954.*

Best Buy's reliance on unpublished cases from the Central District of California in support of its argument

is also unavailing, especially in light of the Seventh Circuit's holding that courts cannot deny class certification based on the possibility that the statutory damages may be substantial. *See Murray,* 434 F.3d at 953-54 ("Reducing recoveries by forcing everyone to litigate independently - so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims - has little to recommend it."). Indeed, as the Seventh Circuit recognized, if it were to adopt Best Buy's argument, "consumer class actions under the Fair Credit Reporting Act would be impossible." *Id.* at 951. The *Murray* decision further noted that "the reason damages can be substantial" is based on the "legislative decision to authorize awards as high as $ 1,000 per person" combined with the defendant's conduct. *Id.* at 953 (citing 15 U.S.C. § 1681n(a)(1)(A)). Best Buy's argument therefore fails.

Finally, Best Buy argues that a class action is not superior to individual claims because it voluntarily [*24] removed the expiration date from its online confirmation page. Best Buy's argument may be relevant to whether it made an attempt to control its exposure in the context of excessive damages, *see id.* at 954, but any such argument does not support Best Buy's contention that a class action is not the superior means for bringing this lawsuit. *See id.* at 953 (Rule 23(b)(3) was designed for cases where "potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."). Moreover, Rule 23 "does not provide for an exception based on after-the-fact compliance." *Matthews v. United Retail, Inc.,* F. Supp. 2d , 248 F.R.D. 210, 2008 U.S. Dist. LEXIS 17217, 2008 WL 618960, at *6 (N.D. Ill. 2008). As such, Best Buy's argument fails.

## CONCLUSION

For these reasons, the Court grants Plaintiff's Motion For Class Certification pursuant to Federal Rule of Civil Procedure 23.

**Dated:** March 20, 2008

/s/ Amy J. St. Eve

**AMY J. ST. EVE**

**United States District Judge**

LEXSEE



Cited
As of: Sep 05, 2008

**STEVEN TROY, Plaintiff, v. THE RED LANTERN INN, INC. d/b/a BALDUCCI'S
and DOES 1-10, Defendants.**

**Case No. 07 C 2418**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**2007 U.S. Dist. LEXIS 89004**

**December 4, 2007, Decided
December 4, 2007, Filed**

**CORE TERMS:** class certification, credit card receipt, class actions, expiration date, commonality, class members, certification, predominance, individually, adequacy, digits, questions of law, proposed class, numerosity, typicality, consumer, claimants, appoint, card, process rights, impracticable, superiority, joinder, pursued, debit, class representative, class size, credit card, adequately protect, potential damages

**COUNSEL:** [*1] For Steven Troy, individually and on behalf of a class, Plaintiff: Daniel A. Edelman, LEAD ATTORNEY, Cathleen M. Combs, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Don Balducci, doing business as Balducci's Italian Restaurant, Defendant: Thomas Raymond Pender, LEAD ATTORNEY, Cremer, Kopon, Shaughnessy & Spina, Chicago, IL; Jessica Lynn Lesniewski, Chicago, IL.

**JUDGES:** MARVIN E. ASPEN, United States District Judge.

**OPINION BY:** MARVIN E. ASPEN

**OPINION**

**MEMORANDUM ORDER AND OPINION**

In his motion for class certification, Plaintiff Steven Troy ("Troy") alleges that the Defendant Red Lantern Inn, Inc. d/b/a Balducci's ("Balducci's") violated the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., as amended by the Fair and Accurate Transactions Act of 2003 ("FACTA"), Pub. L. 108-159, 117 Stat. 1952 (2003), by unlawfully generating a computer-generated credit card receipt that displayed both Troy's credit card expiration date and the last four digits of his credit card number. Presently before us is Troy's motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) and his related request that we appoint Edelman, Combs, Latturner & Goodwin, LLC [*2] ("ECLG") as class counsel. For the reasons set forth below, we grant Troy's motion.

**BACKGROUND**

The FCRA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). This provision went into effect on December 4, 2006 for all credit card receipt printers that were in use before January 1, 2005. Id. § 1681c(g)(3). The meaning of the statute is clear: "Printing either more than five digits of the credit card number or the expiration date of the credit card violates Section 1681c(g)." Iosello v. Leiblys, Inc., 502 F. Supp. 2d 782, 786 (N.D. Ill. 2007). Any person who willfully fails to comply with this section with respect to any consumer is liable for "any actual damages sustained by the consumer as a result of the failure or damages not less than $ 100 and not more than $ 1,000." 15 U.S.C. § 1681n(a)(1)(A).

On approximately April 18, 2007, after the statutory deadline to comply with § 1681c(g)(1), Troy alleges that he visited Balducci's and received a computer-generated [*3] receipt which displayed Troy's credit card expiration date and the last four digits of his credit card number. Troy is seeking class certification for:

> all persons to whom The Red Lantern Inn, Inc. provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in [Illinois] after December 4, 2006, which displays either (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card, or (c) both.

(Pl's Mot. at 1). Balducci's claims to have reset its machines to be compliant with FACTA on May 11, 2007. (Def.'s Resp. at 2; Def. Ex. D).

**ANALYSIS**

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable," (numerosity); "(2) there are questions of law or fact common to the class," (commonality); "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class," (typicality); and "(4) the representative parties will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a). If the numerosity, commonality, typicality, [*4] and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); Cavin v. Home Loan Ctr., Inc., 236 F.R.D. 387, 391 (N.D. Ill. 2006). Troy bears the burden of showing that the proposed class meets the requirements for certification. Retired Chi. Police Ass'n v. City of Chi., 7 F.3d 584, 596 (7th Cir. 1993); Hernandez v. Midland Credit Mgmt., Inc., 236 F.R.D. 406, 410 (N.D. Ill. 2006). In evaluating a motion for class certification, we do not examine the merits of the case. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974). Even though Balducci's does not refute every element Troy must prove for class certification, we must independently validate that all the elements have been met. Murray v. E*Trade Fin. Corp., 240 F.R.D. 392, 395 (N.D. Ill. 2006) (hereinafter "E*Trade") (citing Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003). We retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998); [*5] Murray v. New Cingular Wireless Servs., Inc., 232 F.R.D. 295, 298 (N.D. Ill. 2005) (hereinafter "New Cingular").

**A. Rule 23(a) Requirements**

*1. Numerosity*

Rule 23(a)(1) provides that class treatment is warranted where the potential class "is so numerous that joinder of all members impracticable." Fed. R. Civ. P. 23(a)(1). Given that Balducci's has estimated the potential class size to be approximately 5,000 (Def.'s Resp. at 2; Def. Ex. C.), we find this number sufficient to conclude that joinder is impracticable. See, e.g., McCabe v. Crawford & Co., 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1).").

*2. Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[A] proposed class meets the commonality requirement when the member's claims share a common nucleus of operative fact." E*Trade, 240 F.R.D. at 396. Troy argues that the common nucleus between him and the other class members is the issuance of a credit card receipt bearing the prohibited material under Section 1681c(g)(1). Because these issues are the same across the class, we find [*6] that Troy's claims meet the commonality requirement.

*3. Typicality*

Before certifying a class, we must determine that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). The Seventh Circuit instructs that the plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Id. (internal quotation omitted). Balducci's has not presented any argument suggesting that Troy's claim is not typical of those of the class. Like the other members of the proposed class, he allegedly received a credit card receipt from Balducci's that was in violation of Section 1681c(g)(1) because it contained his credit card expiration date. As a result, we find that Troy's claim meets the typicality requirement.

*4. Adequacy*

Pursuant to Rule 23(a)(4), class certification is appropriate [*7] only if "the representative parties will

fairly and adequately protect the interests of the class." "The plaintiff must show three factors to prove adequacy: (1) [he or she] does not have conflicting or antagonistic interests compared to the class as a whole; (2) [he or she] is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin,* 236 F.R.D. at 392-93; *see also New Cingular,* 232 F.R.D. at 299.

Balducci's claims that Troy is an unsuitable representative of the class because he has filed numerous other FACTA claims, making him a "professional plaintiff." (Def.'s Resp. at 8). However, Troy's repeated litigation actually makes him a better class representative. *See E*Trade,* 240 F.R.D. at 400 (citing *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 954 (7th Cir. 2006) (hereinafter "*GMAC*") ("Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions."). Furthermore, Troy's decision to bring suit against all merchants who have harmed him in violating FACTA does not injure any of the other class [*8] members. *See GMAC,* 434 F.3d at 954. As a result, we find that Troy meets the adequacy requirement under *Rule 23(a).*

Balducci's also argues that Troy's counsel is inappropriate because they are litigating many other FACTA claims. Because experience of class counsel is an important consideration in favor of determining appropriateness, *Gammon v. GC Servs. Ltd. P'ship,* 162 F.R.D. 313, 317-19 (N.D. Ill. 1995), counsels' prior and ongoing litigation is no detriment and is actually supportive of their appointment as class representative.

**B. Rule 23(b)(3) Requirements**

Troy seeks certification under *Rule 23(b)(3),* which permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3).* In order to grant class certification under *Rule 23(b)(3),* we must find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods [*9] for the fair and efficient adjudication of the controversy ["superiority"]. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Fed. R. Civ. P. 23(b)(3).* The predominance and superiority requirements are described in more detail below.

*1. Predominance*

Although related to *Rule 23(a)'s* commonality requirement, "the predominance inquiry is far more demanding." *New Cingular,* 232 F.R.D. at 301 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997). To satisfy this aspect of *Rule 23(b)(3),* "the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims." *Dhamer v. Bristol-Myers Squibb Co.,* 183 F.R.D. 520, 529-30 (N.D. Ill. 1998).

Balducci's argues that [*10] class certification should be denied under criteria (A) and (D) of *Rule 23(b)(3)* because some plaintiffs may show a preference for pursuing their claims individually, and these individual claims can be pursued with no financial risk. These arguments, however, are without merit. Balducci's does not offer any reason why the claimants would want to sue individually. Moreover, even if class certification is granted, individual claimants remain free to opt out of the class. Of course, if some individual claimants select this option, it does not mean the benefits of class certification will not be realized for the other, more common, claimants. *Krey v. Castle Motor Sales, Inc.,* 241 F.R.D. 608, 616 (N.D. Ill. 2007). "Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether. *GMAC,* 434 F.3d at 953 (citing *In re Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293 (7th Cir. 1995)). As a result, Troy has sufficiently proven the predominance requirement.

*2. Superiority*

*Rule 23(b)(3)* also requires a plaintiff to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication [*11] of the controversy." "Class treatment is especially appropriate for consumer claims" because, as here, such actions often involve common factual and legal questions. *New Cingular,* 232 F.R.D. at 303; *Cavin,* 236 F.R.D. at 395-96. Moreover, a class action is warranted "where potential damages may be too insignificant to provide class mem-

bers with incentive to pursue a claim individually." *New Cingular,* 232 F.R.D. at 303 (internal quotations omitted). Balducci's argues that class certification is an inferior method of handling this controversy for four reasons: (I) certification creates the potential for attorney abuse of class action; (ii) potential damages in the class action would be so enormous as to violate Balducci's due process rights; (iii) the compliance efforts already undertaken by Balducci's reduces the benefits of class treatment; and (iv) individual actions provide the superior alternative. [1] We address each of these arguments in turn.

> 1   In support of these arguments, Balducci's references a number of opinions from the Central District of California. These cases have no precedential weight in this district, and we are bound by the Seventh Circuit's decision in *GMAC,* which differs [*12] from the reasoning underlying the decisions in the cases Balducci's references. *See GMAC,* 434 F.3d at 953-55.

### I. Attorney Abuse

Balducci's argues that granting class certification in this case raises the likelihood of attorney abuse because certification here would encourage using Rule 23(b)(3) as a means to solicit litigation. (Def. Resp. at 13). Class certification is often granted in FACTA and FCRA cases. Furthermore, no apparent abuse has occurred in this case. Assuming arguendo that Troy's claims are true, Balducci's was not coerced or tricked into violating the statute, and Troy did not manipulate the situation for the 5,000 other consumers who also allegedly received illegal credit card receipts. Therefore, absent any indication of foul play by Troy or his attorneys, we cannot conclude that there was any attorney abuse in this case.

### ii. Damages and Due Process

If Troy is ultimately successful in representing a class of 5,000 people, statutory damages in this case could range between $ 500,000 and $ 5,000,000. Balducci's argues that this amount would violate its substantive due process rights, especially since the nature of the offense is a "mere technicality." (Def.'s Resp. at 13). [*13] While excessive damages violate a defendant's due process rights, *see State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), such considerations should be "applied after a class has been certified." *GMAC,* 434 F.3d at 954. "Reducing an unnecessarily large statutory damage award is a more palatable option than allowing defendants to commit substantive violations of the law and escape liability essentially because they have violated the rights of too many individuals." *New Cingular,* 232 F.R.D. at 304. By allegedly printing credit card expiration dates for

over four months, Balducci's repeatedly and directly violated Section 1681c(g)--hardly a "mere technicality" to be glossed over. In accordance with Seventh Circuit precedent, we will not deny class certification on this basis. *See GMAC,* 434 F.3d at 953-54.

### iii. Individual Actions v. Class Action

Finally, Balducci's argues that any violations of Section 1681 it may have committed are best pursued individually rather than as a class. We disagree. The large potential class size and the relatively small damage awards in each case render class certification the more efficient approach. Potential class members will be spared the [*14] trouble of finding their own counsel and filing their own individual claims for relatively small statutory amounts. Furthermore, class certification will decrease the number of suits filed for essentially the same issue, thus saving us--and Balducci's--the time and expense of separately adjudicating potentially 5,000 claims when one class action will suffice. *See E*Trade,* 240 F.R.D. at 400 (citing *GMAC Mortgage,* 434 F.3d at 953) (stating in a similar FCRA suit that "Rule 23(b)(3) was designed for situations such as this").

### C. Class Counsel

As a final matter, Troy asks that we appoint ECLG as class counsel. When appointing class counsel we must consider: "counsel's experience in handling class actions . . . and claims asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). ECLG has pursued numerous class action suits similar to Troy's dealing with FCRA and the recent enforcement of FACTA. Counsel, like ECLG, who regularly pursue similar claims are more likely to appropriately serve the class and bring more expertise than their less-experienced counterparts. *See, e.g., E*Trade,* 240 F.R.D. at 397. [*15] Accordingly, we grant Troy's motion and appoint ECLG as class counsel pursuant to Rule 23(g)(1)(A).

### CONCLUSION

For the above stated reasons, we grant Troy's motion for class certification and appoint ECLG as class counsel.

It is so ordered.

/s/ Marvin E. Aspen

MARVIN E. ASPEN

United States District Judge

Date: December 4, 2007

<u>**Citation #3**</u>
**2008 U.S. Dist. LEXIS 22166**